IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, the STATES of CALIFORNIA; COLORADO; CONNECTICUT; DELAWARE; FLORIDA; GEORGIA; HAWAII; ILLINOIS; INDIANA; IOWA; LOUISIANA; MARYLAND; MASSACHUSSETS; MICHIGAN; MINNESOTA; MONTANA; NEVADA; NEW HAMPSHIRE; NEW JERSEY; NEW MEXICO; NEW YORK; NORTH CAROLINA; OKLAHOMA; RHODE ISLAND; TENNESSEE; TEXAS; VIRGINIA; WASHINGTON; WISCONSIN; the DISTRICT OF COLUMBIA; THE CITY OF NEW YORK; THE CITY OF CHICAGO; THE CITY OF PHILADELPHIA; and ALLEGHANY COUNTY, PENNSYLVANIA;<br><br>*ex rel.* JANE DOE,<br><br>                        **Plaintiffs,**<br><br>            **v.**<br><br>ALLERGAN, INC.<br><br>                      **Defendant.** | CASE NO.:<br><br>FILED *IN CAMERA* AND UNDER SEAL PURSUANT TO 31 U.S.C. §3720(b)(2)<br><br>JURY TRIAL DEMANDED |

## ORIGINAL COMPLAINT

Plaintiff-Relator Jane Doe, by and through her undersigned attorneys, on behalf of the

United States of America (the "United States") and the State of California, the State of Colorado,

the State of Connecticut, the State of Delaware, the State of Florida, the State of Georgia, the

State of Hawaii, the State of Illinois, the State of Indiana, the State of Iowa, the State of

Louisiana, the State of Maryland, the Commonwealth of Massachusetts, the State of Michigan,

the State of Minnesota, the State of Montana, the State of Nevada, the State of New Hampshire,

the State of New Jersey, the State of New Mexico, the State of New York, the State of North

Carolina, the State of Oklahoma; the State of Rhode Island; the State of Tennessee, the State of

1

Texas, the Commonwealth of Virginia, the State of Washington, the State of Wisconsin; and the

District of Columbia (collectively "Plaintiff States"), the City of New York, the City of Chicago,

the City of Philadelphia, and Allegheny County, Pennsylvania (the "municipalities") for her

Complaint against Defendant Allergan, Inc. ("Allergan" or "Defendant") alleges based upon

personal knowledge and relevant documents, as follows:

## I.   INTRODUCTION

1.      This is an action to recover damages and civil penalties on behalf of the United

States of America and the Plaintiff States and municipalities arising from false and/or fraudulent

records, statements and claims made, used and caused to be made, used or presented by

Defendant Allergan and/or its agents, employees and co-conspirators in violation of the Federal

Civil False Claims Act, 31 U.S.C. §3729 *et seq.*, as amended ("the FCA" or "the Act") and its

state-law counterparts, the California False Claims Act, (Cal. Gov't Code §§ 12650-12655); the

Colorado Medicaid False Claims Act, (Col. Rev. Stat. § 25.5-1-104 *et seq.*); the Connecticut

False Claims Act, Chapter 319v, Sec. 17b-301 *et seq.*; the Delaware False Claims and Reporting

Act (6 Del. C. § 1201 *et seq.*); the Florida False Claims Act (Fla. Stat. § 68.081 *et seq.*); the

Georgia Medicaid False Claims Act (O.C.G.A. § 49-4-169 *et seq.*); the Hawaii False Claims Act

(H.R.S § 661-21 and H.R.S. 46-171 *et seq.*); the Illinois Whistleblower and Reward Protection

Act (740 I.L.C.S. § 175/1 *et seq.*); the Indiana False Claims Act (Burns Ind. Code Ann. §

5-11-5.5-1 *et seq.*); the Iowa Medicaid False Claims Act, §685.1 *et seq.;* the Louisiana Medical

Assistance Programs Integrity Law (La. R.S. § 46:437.2 *et seq.*); the Maryland False Health

Claims Act of 2010 (Subtitle 6, False Claims Against State Health Plans and State Health

Programs, § 2-601 *et seq.*); the Massachusetts False Claims Act (M.G.L.A. 12 § 5b *et seq.*); the

Michigan Medicaid False Claims Act (M.C.L. § 400.607 *et seq.*); the Minnesota False Claims

Act (Minn. Stat. § 15C.01 *et seq.*); the Montana False Claims Act (Mont. Code Ann. § 17-8-401

*et seq.*); the Nevada False Claims Act (N.R.S. § 357.010 *et seq.*); the New Jersey False Claims Act (New Jersey Statutes 2A:32C-1 *et seq.*); the New Mexico Fraud Against Taxpayers Act (N.M. Stat. Ann. § 44-9-1); the New York False Claims Act (N.Y. C.L.S. St. Fin. § 187 *et seq.*); the North Carolina False Claims Act, N.C. Gen. Stat §§1-605 *et seq.*, the Oklahoma Medicaid False Claims Act (56 Okl. St. § 1005 *et seq.* and 2007 OK. A.L.S. 137); the State False Claims Act of Rhode Island (R.I. Gen. Laws § 91.1-3); the Tennessee Medicaid False Claims Act (T.C.A.§ 71-5-181 *et seq.*); the Texas Medicaid Fraud Prevention Law (Tex. Hum. Res. Code §36.002 *et seq.*); the Virginia Fraud Against Taxpayers Act (Va. Code Ann. § 8.01-216.1 *et seq.*); the Washington Medicaid Fraud False Claims Act (West's RCWA 43.131.0001 *et seq.*); the Wisconsin False Claims for Medical Assistance Act (Updated 05-06 Wis. Stats. § 20.931 *et seq.*); the District of Columbia False Claims Act (DC ST § 2-308.03 *et seq.*); New York City False Claims Act, New York City Administrative Code §7-801-§7-810; the Municipal Code of Chicago (§1-22-010-§1-22-060); the Philadelphia False Claims Act (19 Phila. Code §§ 3600, et seq.); and the Allegheny County (Pennsylvania) False Claims Ordinance (Code of Allegheny County, Pennsylvania Chapter 485).

2.     The instant matter arises in principal part from Defendant Allergan's nationwide, coordinated deceptive promotional practices for its drug Lumigan used to treat glaucoma and ocular hypertension.  Specifically, Allergan has suppressed information about the potential harm that Lumigan can cause patients who take it.  Specifically, Allergan has been aware through human and animal studies, and medical journal articles that Lumigan causes potentially irreversible deepening of the upper eye lid sulcus (hereafter referred to as "DUES"), periorbital fat loss, dermatochalais, and deterioration of the eye lid, resulting in "sunken in eyes."

3.     The occurrence of DUES with prostaglandin analog drug (i.e. drugs such as

3

Lumigan) usage was first reported in medical journal articles as far back as 2004. Subsequent medical journal articles in 2008 and 2009 further discussed the occurrence of DUES in glaucoma patients that used bimatoprost-based products like Lumigan. Allergan ignored these warning signs and refused to change its label to warn patients of these dangers.

4. Despite knowing of these health risks in patients, Allergan has continued to market and sell Lumigan without including sufficient warnings of these dangerous side effects. In fact, Allergan has affirmatively marketed Lumigan, with the active ingredient of bimatoprost, as "safer" and superior to competitor products that include the active ingredients travoprost and latanoprost. The FDA has sent Defendant Allergan warning letters identifying unsubstantiated claims made by Defendant Allergan of the safety and superiority of Lumigan as compared to these competing products.

5. As a direct result of Allergan's improper and misleading marketing practices for Lumigan, health insurance programs funded by the United States and the Plaintiff States and municipalities (collectively the "Government Plaintiffs") including, but not limited to Medicaid, Medicare, Medicare Part D, the Railroad Retirement Medicare Program, Federal Employees Health Benefit Programs, Tri-Care (formerly CHAMPUS), CHAMPVA, State Legal Immigrant Assistance Grants and the Indian Health Service (collectively the "Programs") paid false or fraudulent Lumigan reimbursement claims for prescriptions written to the Programs' beneficiaries for this unsafe medication. The United States and the Plaintiff States and municipalities would not have paid such false claims but for Allergan's illegal and fraudulent conduct.

6. Moreover Allergan's conduct endangered the health of the Programs' beneficiaries by placing them at great risk of harm of developing serious and potentially

4

irreversible side effects that were known to Allergan at all times relevant to this Complaint, but which Allergan intentionally concealed to protect its lucrative Lumigan sales revenues.

7.     The FCA provides that any person who knowingly submits, or causes the submission of, a false or fraudulent claim to the U.S. Government for payment or approval is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government.  Liability attaches when a defendant knowingly seeks payment, or causes others to seek payment, from the Government that is unwarranted.

8.     The Act allows any person having information about a false or fraudulent claim against the Government to bring an action for herself and the Government, and to share in any recovery.  Based on these provisions, Plaintiff-Relator Jane Doe seeks through this action to recover on behalf of the United States and the Plaintiff States and municipalities (which have laws authorizing similar *qui tam* actions) damages and civil penalties arising from Allergan's making or causing to be made false or fraudulent records, statements and/or claims for reimbursement for unsafe Lumigan prescriptions.

9.     Allergan did not directly submit claims for prescription drugs to federal and state health insurance programs, however, Allergan knew -- and in fact it was Allergan's goal -- that its marketing of its unsafe product would cause the submission of thousands of claims to government-funded health programs for prescriptions that would not have been reimbursed had those programs known of the safety issues with Lumigan.

10.    Allergan's unlawful efforts to minimize and distort the side effect and safety profile of Lumigan were used by, and are continued to be used by, the company to market the drug, resulting in sales of hundreds of millions of dollars annually.

**II.    PARTIES**

5

11.     Plaintiff-Relator Jane Doe brings this action on behalf the United States and the Plaintiff States to recover the millions of dollars Medicaid, Medicare, Medicare Part D, the Railroad Retirement Medicare Program, Federal Employees Health Benefit Programs, Tri-Care (formerly CHAMPUS), CHAMPVA, State Legal Immigrant Assistance Grants and the Indian Health Service have been fraudulently induced to pay as a result of false and/or fraudulent Lumigan reimbursement claims submitted by, and caused to be submitted by, Defendant Allergan.

12.     Plaintiff-Relator Jane Doe, is a resident of Philadelphia, Pennsylvania. Plaintiff-Relator Doe has filed the instant *qui tam* suit seeking redress for the company's misrepresentations of Lumigan's safety and efficacy. Plaintiff-Relator Doe's suit is based upon direct and independent knowledge learned from her own investigation of Allergan's Lumigan and Latisse pharmaceuticals and her own discussions with her physician about the dangers associated with these pharmaceuticals.

13.     Defendant Allergan, Inc. ("Allergan" or "Defendant") is a publicly traded company that engages in the development, manufacturing, and marketing of prescription medicines in the United States and elsewhere. Allergan is headquartered in Pennsylvania. One of its primary business activities in the United States relates to the company's manufacture and/or sale of Lumigan, a widely distributed bimatoprost ophthalmic solution that has sales in the hundreds of millions of dollars annually.

## III.    JURISDICTION AND VENUE

14.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331, 28 U.S.C. §1367 and 31 U.S.C. §3732, the last of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730.  Under 31

U.S.C. §3730(e), there has been no statutorily relevant public disclosure of the "allegations or transactions" in this Complaint.  Plaintiff-Relator Jane Doe moreover, qualifies under that section of False Claims Act as an "original source" of the allegations in this Complaint even had such a public disclosure occurred.

15.     Relator Jane Doe shall concurrently serve upon the Attorney General of the United States, the United States Attorney for the Southern District of New York, and the Plaintiff States Attorney Generals' offices, the complaint and a statement summarizing known material evidence and information related to Plaintiff-Relator's Complaint in accordance with the provisions of 31 U.S.C. §3730(b)(2).  The disclosure statement is supported by material evidence based on Relator's direct and independent knowledge.  The initial disclosure's statement and all supplements thereto and documents provided therewith are incorporated herein by reference.

16.     This Court has personal jurisdiction and venue over the Allergan pursuant to 28 U.S.C. §§1391(b) and 31 U.S.C. §3732(a) because those sections authorize nationwide service of process and because Allergan has minimum contacts with the United States.  Moreover, Allergan can be found in, resides, and transacts business in this District.

17.     Venue is proper in this District pursuant to 31 U.S.C. §3732(a) because Defendant Allergan transacts business in this judicial district, and acts proscribed by 31 U.S.C. §3729 have been committed by Defendant Allergan in this District.  Therefore, venue is proper within the meaning of 28 U.S.C. §1391(b) & (c) and 31 U.S.C. §3732(a).

## IV.   BACKGROUND

18.     Among the numerous prescription drugs manufactured and/or distributed by Defendant Allergan in the United States is Lumigan, a widely distributed bimatoprost ophthalmic solution that has sales in the hundreds of millions of dollars annually.

### A.      Lumigan's Indicated Uses

19.      Lumigan received initial approval by the United States Food and Drug Administration ("FDA") in 2001 for the treatment of high eye pressure, also called intraocular pressure (IOP), in people with open-angle glaucoma or ocular hypertension.

### B.      Lumigan's Side Effects

20.      In an effort to generate Lumigan revenues, Allergan has knowingly misrepresented the drug's safety profile.  Allergan has continued to market and sell Lumigan without including sufficient warnings of its dangerous side effects.   In fact, Allergan has affirmatively marketed Lumigan, with the active ingredient of bimatoprost, as "safer" and superior to competitor products that include the active ingredients travoprost and latanoprost. The FDA has sent Defendant Allergan warning letters identifying unsubstantiated claims made by Defendant Allergan of the safety and superiority of Lumigan as compared to these competing products.

21.      Allergan acknowledges on its warning label that the use Lumigan has been reported to cause darkening (pigmentation) of eye color, eyelid skin and eyelashes, as well as increased growth of eyelashes.

22.      Allergan has not acknowledged on its website that use of Lumigan can cause periorbital changes, including sunken eyes (severe orbital fat atrophy) and loss of lower eyelid fullness.  Moreover, prior to March 2012, Defendant Allergan did not include any mention of these side effects on its warning label.  Defendant Allergan changed its warning label in March 2012, but even this warning label has only made vague, inconclusive and inadequate references to these adverse changes caused by Lumigan.

23.      The United States Supreme Court has held that:  ". . . it has remained a central

8

premise of federal drug regulation that the manufacturer bears the responsibility for the content of its label at all times. It is charged with crafting an adequate label and with ensuring that its warnings remain adequate as long as the drug is on the market." See, Wyeth v. Levine, 555 U.S. 555, at 569 (2009).

24.     Federal regulations require a manufacturer to revise its label "to include a warning as soon as there is reasonable evidence of an association of a serious hazard with a drug." See, 21 CFR 201.80(e). Post marketing surveillance is also the responsibility of the manufacturer. See, 21 CFR 314.80(b). Moreover, Federal regulations place the responsibility on manufacturers "to maintain their labeling and update their labeling with new safety information. 73 Fed.Reg. 49605.

25.     In violation of these federal labeling regulations, Defendant Allergan ignored several studies and medical journal articles identifying health risks associated with bimatoprost-based eye drops, such as Lumigan, and refused to change Lumigan's warning label to effectively warn physicians and patients about these risks.

26.     Defendant Allergan refused to change its label warnings because of a concern that physicians and patients would instead prescribe and use competitor products that include the active ingredients travoprost and latanoprost which have a lesser risk of side effects such as DUES.

## V.     APPLICABLE LAW

### A.     The FDA Regulatory Scheme

27.     Under the Food, Drug, and Cosmetics Act ("FDCA"), 21 U.S.C. §§ 301-97, new pharmaceutical drugs cannot be marketed in the United States unless the sponsor of the drug demonstrates to the satisfaction of the Food and Drug Administration ("FDA") that the drug is

safe and effective for each of its intended uses. 21 U.S.C. §355 (a) & (d). Approval of the drug by the FDA is the final stage of a multi-year process of study and testing.

28.    The FDA does not approve a drug for treatment of sickness in general. Instead, a drug is approved for treatment of a specific condition, for which the drug has been tested in patients.   The specific approved use is called the "indication" for which the drug may be prescribed. The FDA will specify particular dosages determined to be safe and effective for each indication.

29.    The indication and dosages approved by the FDA are set forth in the drug's labeling, the content of which is also reviewed and approved by the FDA. 21 U.S.C. §§352, 355(d). An example of the drug's labeling is the printed insert in the drug's packaging.  The FDA will only approve the new drug application if the labeling conforms to the uses and dosages that the FDA has approved.  21 U.S.C. §355(d).

30.    Although the FDA is responsible for ensuring that a drug is safe and effective for the specific approved indication, the FDA does not regulate the practice of medicine.

31.    Defendant Allergan misrepresented the true health risks associated with Lumigan to the FDA.   Accordingly, each such claim for payment Allergan knowingly caused to be submitted under these false pretenses and each false statement it made to cause claims to get claims for Lumigan paid, constitutes a false claim for which Allergan is accountable under the Federal False Claims Act and the analogous laws of the Plaintiff States.

**(1) Prescription Drug Reimbursement in Federal Health Care Programs**

32.    Whether a drug is FDA-approved for a particular use will largely determine whether a prescription for that use will be reimbursed under Medicaid and other federal health care programs.

### a.  The Medicaid Act

33.     Title XIX of the Social Security Act is a program that provides medical assistance for certain individuals and families with low incomes and resources.  The program, known as Medicaid, became law in 1965 as a jointly funded cooperative venture between the Federal and State governments to assist States in the provision of adequate medical care to eligible needy Americans.  Among the groups of people served by Medicaid are eligible low-income parents and children.  Among the health benefits funded primarily by Medicaid, up until January 1, 2006, was funding for the prescription drug needs of the Program's beneficiaries.

34.     A State must have a plan for medical assistance that has been approved by the Centers for Medicare and Medicaid Services (CMS), which administers the program on behalf of the Secretary of Health and Human Services to participate in the Medicaid program.  The state plan must specify, among other things, the specific kinds of medical care and services that will be covered.  42 U.S.C. § 1396a(a)(10) and (17).  If the plan is approved by the Secretary, the State thereafter is eligible for federal financial participation, *i.e.,* reimbursement by the federal government for a specified percentage of the amounts that qualify as medical assistance under the state plan.  *Id.* at §§ 1396b(a)(I), 1396d(b).

35.     States are accorded a broad measure of flexibility in tailoring the scope and coverage of their plans to meet the particular needs of their residents and their own budgetary and other circumstances.  While the Medicaid Act requires States to provide certain basic services, the Act permits, but does not require, States to cover prescription drugs, although most States choose to do so.  42 U.S.C. § 1396d(a)(12).

36.     In 1990, Congress enacted the Medicaid Drug Rebate Statute, codified at 42 U.S.C. §1396r-8, to "establish a rebate mechanism in order to give Medicaid the benefit of the

best price for which a manufacturer sells a prescription drug to any public or private purchaser."

H.R. Rep. No. 881, 101st Cong., 2d Sess. 96 (1990). That statute prohibits federal financial participation for covered outpatient drugs unless there is a rebate agreement in effect under section 1396r-8. See 42 U.S.C. §§ 1396b(i)(10)(A) and 1396r-8(a)(I). Once a drug manufacturer has entered into a rebate agreement for a covered outpatient drug, a State is generally required to cover that drug under the state plan.

### b.  Other Federal Health Care Programs

37.    In addition to Medicaid, the federal government reimburses a portion of the cost of prescription drugs under several other federal health care programs, including but not limited to Medicare, CHAMPUS/TRICARE, CHAMPVA and the Federal Employees Health Benefit Program ("FEHBP"). These programs, described below, have been harmed by defendant Allergan's conduct in that they have been caused by Allergan to pay false and/or fraudulent claims as a direct result of the conduct complained of in this Complaint.

## VI.    ALLEGATIONS

### A.    Allergan Misrepresents Lumigan's Side-Effect Profile to Sustain and Grow Lumigan Sales.

38.    It is now established in peer reviewed medical literature that the significant side effects associated with Lumigan include, but are not limited to, periorbital fat atrophy, deepening of the upper eyelid sulcus ("DUES"), loss of lower eyelid fullness, and involution of the dermatchalasis compared with an untreated eye. These side effects have been ignored by the company.

39.    Recently, in 2013, a Turkish study revealed that periobitopathy side effects were much more statistically significant in patients treated with bimatoprost (Lumigan) as opposed to

latanoprost and travoprost.

40.     While all drugs may affect periorbital fat loss, it was most frequently reported in patients who used bimatoprost (Lumigan).

41.     In the study entitled, *Prostaglandin associated periorbitopathy in patients using bimatoprost, latanoprost and travoprost*, conducted by doctors at the Department of Ophthalmology, Gulhane Military Academy of Medicine, Ankara, Turkey, doctors found that the overall frequency of prostaglandin-associated periorbitopathy was 93.3% in the bimatoprost group, 41.4% in the latanoprost group and 70% in the travoprost group.

42.     The Turkish study also found that the frequency of DUES was 80% in the bimatoprost group, 15.7% in the latanoprost group and 45% in the travoprost group.

43.     A more recent study performed by the Inouye Eye Hospital in Tokyo, Japan, titled "Managing Adverse Effects Of Glaucoma Medications" and published in May of 2014, also confirmed that patients using bimatoprost ingredient products like Lumigan had the highest frequency of DUES, as compared with similar drugs.  In the Japanese study, DUES occurred in 60% of patients who took bimatoprost, as compared to only 50% for patients using travoprost, 24% for patients using latanoprost, and 18% for patients using tafluprost.

44.     Upon information and belief, Allergan has had knowledge since its clinical trials that the frequency of periorbitopathy and DUES is not a class effect but instead, more frequently occurs with use of its products as compared to others.

45.     Doctors at WillsEye Hospital in Philadelphia, Pennsylvania have brought this information to Allergan's attention and are expected to publish a study with similar conclusions as the Turkish study.

46.     Upon information and belief, Allergan is upset by the anticipated release of this

13

data.

47.     To this date, Allergan still maintains that the frequency of periorbitopathy and DUES is a class effect and that its drug is just as safe as its competitors even though it knows this is not true.

48.     Upon information and belief, as of November 2013, WillsEye limited and/or discontinued its use of Lumigan.

49.     Allergan also manufacturers Latisse, a (bimatoprost ophthalmic solution), a drug indicated for hypotrichosis (inadequate or not enough lashes) to grow eyelashes longer, fuller, darker.

50.     Latisse contains the same active ingredient as Lumigan – bimatoprost.

51.     Unlike Lumigan, Latisse is typically prescribed by plastic and dermatologic surgeons and is not typically covered by insurance because it is deemed cosmetic.

52.     Latisse – bimatoprost to grow eyelashes - was approved by the FDA in December 2008.

53.     Surprisingly, in September 2011, while Allergan added the risk of Prostaglandin-Associated Periorbitopathy to the Latisse label, it did not add it to the Lumigan label until March 2012.

54.     However, even though Lumigan's label now contains "deepening of the eyelid sulcus" as a post-marketing experience adverse reaction, it does not convey the true risks of Prostaglandin-Associated Periorbitopathy to doctors and patients.

55.     Because patients and doctors are unaware of the true risks associated with Lumigan, patients are likely to suffer irreversible damage to the eyelid and possible ocular damage, especially if treatment exceeds three (3) months' time.

14

56.     According to the FDCA, a drug is misbranded unless its labeling contains adequate: (1) directions for use and its warnings against dangerous uses and unsafe dosages or methods of administration; (2) or it bears a false or misleading label.

57.     Lumigan is misbranded because it does not provide doctors with the necessary information to properly treat patients.

58.     For instance, a label that contained truthful and accurate information concerning Lumigan's side effects would allow doctors to treat patients who already have deep-set eyes at a certain baseline or who only need unilateral treatment with eye drops other than Lumigan or prostaglandin analogues.

59.     Furthermore, a doctor would likely chose to prescribe and treat a patient with a prostaglandin analogue that carried a less serious risk of deepening of the eyelid sulcus.

**B.     The Financial Consequences of Allergan's Unlawful Marketing Practices Involving Lumigan Are Substantial.**

60.     Because of Allergan's concealment of adverse side effects alleged in this Complaint, sales of Lumigan in the United States have risen from approximately $123 million in 2002 to approximately $622 million in 2012.

61.     A substantial portion of Lumigan sales are paid for by jointly-funded federal and state health care programs such as Medicaid, as well as through various federally funded health care programs, including, but not limited to, Medicare and Medicare Part D.

62.     The financial cost of Lumigan to the United States and the Plaintiff States through *inter alia* Medicaid, Medicare, Medicare Part D and state programs, has been substantial.  In addition, but for Allergan's concealment of Lumigan's adverse side effects, these Lumigan prescriptions would not have been written and reimbursed by government-funded health care programs.

15

63.     For example, it is believed and, therefore, averred that the cost of Lumigan for a single patient alone is approximately $135.00 for a 2.5 ml eye dropper of Lumigan .01%.

64.     The financial cost of Lumigan to the United States and the Plaintiff States through Medicaid, Medicare, Medicare Part D, the Railroad Retirement Medicare Program, Federal Employees Health Benefit Programs, Tri-Care (formerly CHAMPUS), CHAMPVA, State Legal Immigrant Assistance Grants and the Indian Health Service has been substantial.

## VIII.  GOVERNMENT FUNDED HEALTHCARE PROGRAMS WERE DAMAGED BY PAYING FALSE LUMIGAN CLAIMS

65.     In addition to Medicaid, the federal government reimburses a portion of the cost of prescription drugs under several other health care programs, including but not limited to Medicare, Medicare Part D, the Railroad Retirement Medicare Program, Federal Employees Health Benefit Programs, Tri-Care (formerly CHAMPUS), CHAMPVA, State Legal Immigrant Assistance Grants and the Indian Health Service, as alleged below.  As alleged below, these programs operate in similar ways to the Medicare program.  For example, the VA and CHAMPUS/Tri-care operate in substantially similar ways to the Medicare and Medicaid programs, but primarily for the benefit of military veterans, their spouses (or widowed spouses) and other beneficiaries.

66.     Coverage of drug use under these programs is similar to coverage under the Medicaid program.

### A.     Medicaid

67.     Title XIX of the Social Security Act is a program which provides medical assistance for certain individuals and families with low incomes and resources.  The program, known as Medicaid, became law in 1965 as a jointly funded cooperative venture between the Federal and State governments to assist States in the provision of adequate medical care to

16

eligible needy Americans. Among the groups of people served by Medicaid are eligible low-income parents and children.

68.     The Medicaid Program (42 U.S.C. § 1395, *et seq.*) is administered through the Centers for Medicare and Medicaid Services (CMS), which is a division of the Department of Health and Human Services (HHS) of the federal government.

**B.     Medicare and Medicare Part D**

69.     Medicare is a government financial health insurance program administered by the Social Security Administration of the United States. The health insurance provided to beneficiaries of the Medicare insurance program is paid in whole or in part by the United States. Medicare was promulgated to provide payment for medical services, durable medical equipment and other related health items for individuals ages 65 and over. Medicare also makes payment for certain health services provided to additional classes of needy classes of individual healthcare patients pursuant to federal regulation.

70.     On December 8, 2003, Congress enacted the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (the "MMA"). Title I of the MMA created new outpatient prescription drug coverage under Medicare ("Medicare Part D").

71.     Medicare Part D went into effect on January 1, 2006. The Program is administered by the United States Department of Health and Human Services, Centers for Medicare and Medicaid ("CMS"). For "dual eligibles," defined as individuals who received prescription drug coverage under Medicaid in addition to Medicare coverage for other health care in 2005, enrollment in Medicare Part D was compulsory. Such beneficiaries were automatically switched to Part D plans for 2006 and commenced receiving comprehensive prescription drug coverage under Medicare Part D.

17

72.     Coverage of prescription drugs under Medicare Part D is subject to the same regulations as coverage under the Medicaid Program described above.

73.     As a direct, proximate and intended result of the conduct of Defendant Allergan alleged herein, in violation of the federal False Claims Act and the analogous laws of the Plaintiff States and municipalities, the Medicare and Medicare Part D programs have been damaged.

### C.     The Railroad Retirement Medicare Program

74.     The Railroad Retirement Medicare program is authorized by the Railroad Retirement Act of 1974, at 45 U.S.C. §231 *et seq.* It is administered through the United States Railroad Retirement Board, "RRB," and furnishes Medicare coverage to retired railroad employees.

75.     As a direct, proximate and intended result of the conduct of Defendant Allergan alleged herein in violation of the federal False Claims Act and the analogous laws of the Plaintiff States and municipalities, the RRB program has been damaged.

### D.     Federal Employee Health Benefit Plans

76.     The Federal Employees Health Benefits Program ("FEHBP") is administered by the United States Office of Personnel Management ("OPM") pursuant to 5 U.S.C. §8901 *et seq.* and provides health care coverage to federal employees, retirees and their dependants and survivors.

77.     As a direct, proximate and intended result of the conduct of Defendant Allergan alleged herein in violation of the federal False Claims Act and the analogous laws of the Plaintiff States and municipalities, the FEHBP program has been damaged.

### E.     Tri-Care

78.     The Tri-Care program, formerly CHAMPUS, is administered by the United States Department of Defense through its component in agency, CHAMPUS, under the authority of 10 U.S.C. §§1701-1106.  It is a health care program that provides for care in civilian facilities for members of the uniformed services and their dependents.

79.     As a direct, proximate and intended result of the conduct of Defendant Allergan alleged herein in violation of the federal False Claims Act and the analogous laws of the Plaintiff States and municipalities, the Tri-care Program has been damaged.

### F.     The Veterans Administration

80.     The Civilian Health and Medical Program of the Department of Veterans Affairs ("CHAMPVA") is a comprehensive health care program in which the VA shares the cost of covered health care services and supplies with eligible beneficiaries.   The program is administered by Health Administration Center and its offices are located in Denver, Colorado. In general, the CHAMPVA program covers most health care services and supplies that are medically necessary.

81.     Due to the similarity between CHAMPVA and the Department of Defense ("DoD") Tri-Care program, the two are often mistaken for each other.   CHAMPVA is a Department of Veterans Affairs program whereas Tri-Care is a regionally managed health care program for active duty and retired members of the uniformed services, their families and survivors.  In some cases a veteran may appear to be eligible for both/either program on paper. However, military retirees, or the spouse of a veteran who was killed in action, are and will always be Tri-Care beneficiaries.

82.     Pursuant to 38 U.S.C. §8126, and the regulations based thereon, and contracts the Veterans Administration had with manufacturers, drugs furnished to the Veterans' Administration by drug manufacturers must be furnished at the best price.

83.     The VA and CHAMPUS/Tri-care operate in substantially similar ways to the Medicare and Medicaid programs, but primarily for the benefit of military veterans, their spouses (or widowed spouses) and other beneficiaries.

84.     As a direct, proximate and intended result of the conduct of the Defendants' alleged herein in violation of the federal false claims act and the analogous laws of the Plaintiff States, the CHAMPVA program has been damaged.

**G.     Indian Health Service**

85.     The Indian health service is responsible for providing comprehensive health services to more than 1,400,000 Americans.  It is administered by the department of health and human services pursuant to 42 U.S.C.A. 2002 *et seq.*  The statute authorizes the Secretary to enter into contracts with independent providers to furnish health services to Native Americans whenever the Secretary determines that independent providers can better meet the population's need.

**H.     State Legal Immigrant Assistance Grants**

86.     Relator is informed and believes and based thereon alleges that the United State also furnishes funds which several States use to pay for such drugs pursuant to State Legal Immigrant Assistance Grants ("SLIAG"), 8 U.S.C.A §1255A; 45 C.F.R. §402.10.

87.     As a direct, proximate and intended result of the conduct of the Defendants' alleged herein in violation of the federal false claims act and the analogous laws of the Plaintiff States, the SLIAG program has been damaged.

## COUNT ONE
### Violations of Federal False Claims Act
### 31 U.S.C. § 3729(a)(1)[1]

88.     Plaintiff incorporates by reference and re-allege all of the foregoing paragraphs as if fully set forth herein.  This Count is brought by Plaintiff-Relator Jane Doe in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for Defendant's violations of 31 U.S.C. §3729.

89.     By virtue of the above-described acts, Defendant Allergan knowingly caused to be presented false or fraudulent claims for Lumigan for payment or approval, and continues to cause to be submitted false or fraudulent claims for Lumigan for payment or approval, directly or indirectly, to officers, employees or agents of the United States.

90.     Plaintiff United States, unaware of the falsity of the claims and/or statements caused to be made by Defendant Allergan and in reliance on the accuracy thereof, paid said Defendant for claims that would otherwise not have been allowed.

91.     The amounts of the false or fraudulent claims caused by the Defendant to be submitted to the United States for Lumigan were material.  By reason of Defendant Allergan's wrongful conduct, the United States has suffered substantial losses in an amount to be proved at trial, and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each such false claim caused to be submitted by Defendant Allergan.

---

[1] For all unlawful conduct for which Defendant Allergan is liable under this Count, and for all false claims it caused to be submitted, that occurred after May 20, 2009, the date on which Congress amended and renumbered the False Claims Act pursuant to the Fraud Enforcement and Recovery Act ("FERA"), Pub.L.No. 111-21, §4, 123 Stat. 1617, 1621 (2009), this Complaint should be deemed to include violations of the FCA as amended by FERA, specifically, 31 U.S.C. §3729(A)(1)(A).

92.     Relator-Plaintiff believes and avers that she is an original source of the facts and information on which this action is based.

**COUNT TWO**
**Violations of False Claims Act**
**31 U.S.C. § 3729(a)(2)** [2]

93.     Plaintiff incorporates by reference and re-allege all of the foregoing paragraphs as if fully set forth herein.  This Count is brought by Plaintiff-Relator Jane Doe in the name of the United States under the *qui tam* provisions of 31 U.S.C. § 3730 for Defendant's violation of 31 U.S.C. § 3729(a)(2).

94.     By virtue of the above-described acts, Defendant Allergan knowingly caused to be made or used false records or statements to get false or fraudulent claims for payment or approval by the United States, and continues to make, use or cause false records and statements to be made or used to get false or fraudulent claims for Lumigan paid or approved by the United States.

95.     Plaintiff United States, unaware of the falsity of the records and/or statements caused to be made and used by Defendant Allergan, and in reliance on the accuracy thereof, have paid and approved, and continue to pay and approve, claims for Lumigan that were ineligible for reimbursement and would not have been paid or approved if any part of the truth were known.

96.     The amounts of the false or fraudulent claims caused by the Defendant to be submitted to the United States for Lumigan were material.  By reason of Defendant Allergan's wrongful conduct, the United States has suffered substantial losses in an amount to be proved at

---

[2] For all unlawful conduct for which Defendant Allergan is liable under this Count, and for all false claims it caused to be submitted, that occurred after May 20, 2009, the date on which Congress amended and renumbered the False Claims Act pursuant to the Fraud Enforcement and Recovery Act ("FERA"), Pub.L.No. 111-21, §4, 123 Stat. 1617, 1621 (2009), this Complaint should be deemed to include violations of the FCA as amended by FERA, specifically, 31 U.S.C. §3729(A)(1)(A).

trial, and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each such false statement caused to be made or used by Defendant Allergan.

97.     Plaintiff-Relator believes and avers that she is an original source of the facts and information on which this action is based.

**COUNT THREE**
**Violations of the False Claims Act,**
**31 U.S.C. §3729(a)(3)** [3]

98.     Plaintiff re-alleges and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.  Defendant Allergan entered into conspiracies with paid consultants and public officials for the purpose of defrauding the Plaintiff United States.

99.     By the foregoing acts and omissions, Defendant Allergan took actions in furtherance of its conspiracies, including but not limited to concealing known side effects from patients and from the United States.

100.    By the foregoing acts and omissions, Defendant Allergan entered into these unlawful marketing conspiracies to defraud the United States by causing false and fraudulent claims to be paid and approved in violation of the False Claims Act, 31 U.S.C. §3729(a)(3).

101.    At all times relevant to the complaint, Allergan acted with the requisite knowledge.

102.    As a direct and proximate consequence of Defendant Allergan's conspiratorial conduct, the United States has suffered significant, material financial damages in an amount to

---

[3] For all unlawful conduct for which Defendant Allergan is liable under this Count, and for all false claims it caused to be submitted, that occurred after May 20, 2009, the date on which Congress amended and renumbered the False Claims Act pursuant to the Fraud Enforcement and Recovery Act ("FERA"), Pub.L.No. 111-21, §4, 123 Stat. 1617, 1621 (2009), this Complaint should be deemed to include violations of the FCA as amended by FERA, specifically, 31 U.S.C. §3729(A)(1)(A).

be proved at trial. The United States *ex rel.* Plaintiff-Relator is entitled to multiple damages under the False Claims Act, to be determined at trial, plus a civil penalty of $5,500 to $11,000 for each ineligible Lumigan claims submitted to the United States for payment.

## COUNT FOUR
### Violations of the California False Claims Act
### Ca. Government Code §12650 et seq.

103.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.

104.    This Count is brought by Plaintiff-Relator Jane Doe in the name of the State of California under the *qui tam* provisions of the California False Claims Act, California Government Code §12651(a) pursuant to which treble damages and civil penalties are sought.

105.    Defendant Allergan at all times relevant to this action sold and marketed, and continues to sell and market, pharmaceuticals, including Lumigan, in the State of California.

106.    Cal. Gov't Code §12651(a) provides liability for the costs of a civil action, a civil penalty of up to $10,000 and treble damages for all damages sustained by the state for any person who-

(1) knowingly presents, or causes to be presented, to an officer or employee of the state or of any political subdivision thereof, a false claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or any political subdivision;

(3) conspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or by any political subdivision;

(4) is a beneficiary of an inadvertent submission of a false claim, subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the

political subdivision within a reasonable time after discovery of the false claim.

107.    By virtue of the above-described acts, among others, Defendant Allergan knowingly caused to be presented false or fraudulent claims for payment or approval, and continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees or agents of the State of California, for Lumigan.

108.    Specifically, Defendant has:

- caused thousands of false claims to be presented to the State of California,

- knowingly made, used or caused to be made or used false records to get false claims paid,

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

- failed to disclose the existence of the false claims it has caused to be presented.

109.    The amounts of the false or fraudulent claims to the State of California were material.

110.    Plaintiff State of California, being unaware of the falsity of the claims caused to be submitted by Defendant Allergan and in reliance on the accuracy thereof paid and continues to pay for improperly prescribed Lumigan.

**COUNT FIVE**
**Colorado Medicaid False Claims Act**
**Colo. Rev. Stat. § 25.5-1-104** *et seq.*

111.    Relator incorporates by reference and re-alleges all above paragraphs as if fully set forth herein.

112.     This is a claim for treble damages and penalties under the Colorado Medicaid False Claims Act.

113.     By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Colorado State Government for payment or approval.

114.     By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Colorado State Government to approve and pay such false and fraudulent claims.

115.     The Colorado State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal inducements and/or business practices.

116.     By reason of the Defendants' acts, the State of Colorado has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

117.     The State of Colorado is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**COUNT SIX**
**Connecticut False Claims Act**
**Chapter 319v, Sec. 17b-301** *et seq.*

118.     Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

119.     This is a claim for treble damages and penalties under the Connecticut False Claims Act.

26

120.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Connecticut Government for payment or approval.

121.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Connecticut Government to approve and pay such false and fraudulent claims.

122.    The Connecticut Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal inducements and/or business practices.

123.    By reason of the Defendant's acts, the State of Connecticut has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

124.    The State of Connecticut is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendant.

### COUNT SEVEN
### Violations of the Delaware False Claims Act
### Del. Stat. Tit. VI. §1201

125.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein. This Count is brought by Plaintiff-Relator Jane Doe in the name of the State of Delaware under the *qui tam* provisions of the Delaware False Claims and Reporting Act, Delaware Statute Title VI, Section 1201.

126.    Defendant Allergan at all times relevant to this action sold and marketed, and continues to sell and market, pharmaceuticals in the State of Delaware, including Lumigan.

27

127. The Delaware False Claims and Reporting Act, 6 Del Code Ann. §1201(a)(1) provides for liability for any person who: knowingly presents or causes to be presented, directly or indirectly, to an officer or employee of the Government a false or fraudulent claim for payment or approval; . . . shall be liable to the Government for a civil penalty of not less than $5,500 and not more than $11,000 for each act constituting a violation of this section, plus 3 times the amount of the actual damages which the Government sustains because of the act of that person.

128. The Delaware False Claims and Reporting Act, 6 Del. C. §1201(a)(2) provides for liability for any person who: knowingly makes, uses or causes to be made or used, directly or indirectly, a false record or statement to get a false or fraudulent claim paid or approved; ...shall be liable to the Government for a civil penalty of not less than $5,500 and not more than $11,000 for each act constituting a violation of this section, plus 3 times the amount of the actual damages which the Government sustains because of the act of that person.

129. The Delaware False Claims and Reporting Act, 6 Del. C. §1201(a)(3), provides for liability for any person who: Conspires to defraud the Government by getting a false or fraudulent claim allowed or paid; . . . shall be liable to the Government for a civil penalty of not less than $5,500 and not more than $11,000 for each act constituting a violation of this section, plus 3 times the amount of the actual damages which the Government sustains because of the act of that person.

130. By virtue of the above-described acts, among others, Defendant Allergan knowingly caused to be presented false or fraudulent claims for payment or approval, and continues to cause to be submitted false or fraudulent claims for payment or approval, directly or

indirectly, to officers, employees or agents of the State of Delaware, for Lumigan.  Specifically,

Defendant has:

- caused thousands of false claims to be presented to the State of Delaware,

- knowingly made, used or caused to be made or used false records to get false claims paid,

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

- failed to disclose the existence of the false claims it has caused to be presented.

131.    The amounts of the false or fraudulent claims to the State of Delaware were material.

132.    Plaintiff State of Delaware, being unaware of the falsity of the claims caused to be submitted by the Defendant, and in reliance on the accuracy thereof paid and continues to pay for improperly prescribed Lumigan.

### COUNT EIGHT
### District of Columbia False Claims Act
### D.C. Code Ann. § 2-308.14 (a)(1)-(3), (7)

133.    Plaintiff restates and incorporates each and every allegation above as if the same were fully set forth herein.

134.    This is a claim for treble damages and penalties under the District of Columbia False Claims Act.

135.    By virtue of the acts described above, defendants knowingly presented or caused to be presented, false or fraudulent claims to the District of Columbia Government for payment or approval.

136.    By virtue of the acts described above, defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the District of Columbia Government to approve and pay such false and fraudulent claims.

29

137.    By virtue of the acts described above, defendants conspired with each other and with others to defraud the District of Columbia by inducing the District of Columbia Government to pay or approve false or fraudulent claims.

138.    The District of Columbia Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendants, paid and continues to pay the claims that would not be paid but for defendants' illegal inducements and/or business practices.

139.    By reason of the defendants' acts, the District of Columbia has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

140.    The District of Columbia is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendants.

## COUNT NINE
### Violations of the Florida False Claims Act
### Fl. Stat. §§68.081-68.09

141.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.

142.    This Count is brought by Plaintiff-Relator Jane Doe in the name of the State of Florida under the *qui tam* provisions of Florida False Claims Act, Fl. Stat. §§68.081-68.09.

143.    Defendant Allergan at all times relevant to this action sold and marketed, and continues to sell and market, pharmaceuticals in the State of Florida, including Lumigan.

144.    Fla. Stat § 68.082(2)(a)-(c) provide liability for any person who-

- Knowingly presents, or causes to be presented, to an officer or employee of an agency, a false or fraudulent claim for payment or approval; …

30

Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by an agency;. . . is liable to the state for a civil penalty of not less than $5,500 and not more than $11,000 and for treble the amount of damages the agency sustains because of the act or omission of that person.

• Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by an agency;. . . is liable to the state for a civil penalty of not less than $5,500 and not more than $11,000 and for treble the amount of damages the agency sustains because of the act or omission of that person.

• Conspires to submit a false claim to an agency or to deceive an agency for the purpose of getting a false or fraudulent claim allowed or paid; …is liable to the state for a civil penalty of not less than $5,500 and not more than $11,000 and for treble the amount of damages the agency sustains because of the act or omission of that person.

145.    By virtue of the above-described acts, among others, Defendant Allergan caused to be presented false or fraudulent claims for payment or approval, and continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees or agents of the State of Florida, for Lumigan.

146.    Specifically, Defendant has:

• caused thousands of false claims to be presented to the State of Florida,

• knowingly made, used or caused to be made or used false records to get false claims paid,

31

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

- failed to disclose the existence of the false claims it has caused to be presented

147.    The amounts of the false or fraudulent claims to the State of Florida were material.

148.    Plaintiff State of Florida, being unaware of the falsity of the claims caused to be submitted by the defendant, and in reliance on the accuracy thereof paid and continues to pay for improperly prescribed Lumigan.

## COUNT TEN
### Violations of the Georgia State False Medicaid Claims Act, O.C.G.A. § 49-4-168 *et seq.*

149.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.

150.    This is a *qui tam* action brought by brought by Relator Jane Doe and the State of Georgia to recover treble damages, civil penalties and the cost of this action, under the Georgia State False Medicaid Claims Act, O.C.G.A. § 49-4-168 *et. seq.*

151.    Defendant Allergan at all times relevant to this action sold and marketed, and continues to sell and market, pharmaceuticals in the State of Georgia, including Lumigan.

152.    Georgia State False Medicaid Claims Act, O.C.G.A. § 49-4-168.1(a), specifically provides in part:

(a) Any person who:

    i.  Knowingly presents or causes to be presented to the Georgia Medicaid program a false or fraudulent claim for payment or approval;

32

ii.   Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Georgia Medicaid program;

iii.   Conspires to defraud the Georgia Medicaid program by getting a false or fraudulent claim allowed or paid;

…shall be liable to the State of Georgia for a civil penalty of not less than $5,500.00 and not more than $11,000.00 for each false or fraudulent claim, plus three times the amount of damages which the Georgia Medicaid program sustains because of the act of such person.

153.   By virtue of the acts described above, Defendant knowingly presented, or caused to be presented, false or fraudulent claims to the Georgia State Government for payment or approval.

154.   Specifically, Defendant has:

- caused thousands of false claims to be presented to the State of Georgia,
- knowingly made, used or caused to be made or used false records to get false claims paid;
- conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,
- failed to disclose the existence of the false claims it has caused to be presented

155.   For example, Lumigan prescriptions for the purposes of non-medically accepted uses would not have been presented but for the illegal incentives and unlawful promotional activities made by Defendant.  As a result of this illegal scheme, these claims were improper in whole pursuant to the Georgia State False Medicaid Claims Act.

33

156.    By virtue of the acts described above, Allergan knowingly made, used, or caused to be made or used, false records and statements, and omitted material facts, to induce the government to approve and pay such false and fraudulent claims.

157.    Each prescription that was written as a result of Defendant's illegal marketing practices represents a false or fraudulent record or statement. Each claim for reimbursement for such prescriptions for non-medically accepted uses submitted to a State-funded health insurance program represents a false or fraudulent claim for payment.

158.    Plaintiff cannot at this time identify all of the false claims for payment that were caused by Allergan's conduct. The false claims were presented by thousands of separate entities, and over many years.

159.    The Georgia State Government, unaware of the falsity of the records, statements, and claims made, or caused to be made by Allergan, paid and continues to pay the claims that would not be paid but for Allergan's false and illegal off-label marketing practices.

160.    By reason of Allergan's acts, the Georgia State Government has been damaged, and continues to be damaged, in substantial amounts to be determined at trial.

161.    Georgia is entitled to the maximum penalty for each and every false or fraudulent claim, record, or statement made, used, presented, or caused to be made, used, or presented by Allergan.

162.    Defendant did not, within a reasonable period of time after first obtaining information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

34

163.    Relator Jane Doe is a private person with direct and independent knowledge of the allegations in this Complaint, who has brought this action pursuant to Georgia State False Medicaid Claims Act on behalf of herself and the State of Georgia.

164.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Georgia in the operation of its Medicaid program.

**COUNT ELEVEN**
**Violations of the Hawaii False Claims Act**
**Haw. Rev. Stat. §661-21** *et seq.*

165.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.  This Count is brought by Plaintiff-Relator Jane Doe in the name of the State of Hawaii under the *qui tam* provisions of Hawaii False Claims Act, Haw. Rev. Stat. §661-21 *et seq.*

166.    Defendant Allergan at all times relevant to this action sold and marketed, and continues to sell and market, pharmaceuticals in the State of Hawaii, including Lumigan.

167.    The Hawaii False Claims Act, Haw. Rev. Stat § 661-21(a)(1)-(3) specifically provides that any person who:

(1)    Knowingly presents, or causes to be presented, to an officer or employee of the State a false or fraudulent claim for payment or approval;…

(2)    Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;…

(3)    Conspires to defraud the State by getting a false or fraudulent claim allowed or paid;…

*    *    *

35

Shall be liable to the State for a civil penalty of not less than $5,000 and not more than $10,000, plus three times the amount of damages that the state sustains due to the act of that person.

168.    By virtue of the above-described acts, among others, Defendant Allergan knowingly caused to be presented false or fraudulent claims for payment or approval, and continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees or agents of the State of Hawaii, for Lumigan.

169.    Specifically, Defendant has:

- caused thousands of false claims to be presented to the State of Hawaii,

- knowingly made, used or caused to be made or used false records to get false claims paid,

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

- failed to disclose the existence of the false claims it has caused to be presented.

170.    The amounts of the false or fraudulent claims to the State of Hawaii were material.

171.    Plaintiff State of Hawaii, being unaware of the falsity of the claims caused to be submitted by Defendant, and in reliance on the accuracy thereof paid and continues to pay for improperly prescribed Lumigan.

## COUNT TWELVE
### Violations of the Illinois Whistleblower Reward and Protection Act
### 740 ILCS 175/1 *et seq.*

172.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.  This Count is brought by Plaintiff-Relator Jane Doe in the name of

36

the State of Illinois under the *qui tam* provisions of 740 ILCS 175/4 for Defendant's violation of 740 ILCS 175/3.

173.    Defendant Allergan at all times relevant to this action sold and marketed, and continues to sell and market, pharmaceuticals in the State of Illinois, including Lumigan.

174.    The Illinois Whistleblower Reward and Protection Act, 740 Ill. Comp. Stat. §175/3 (a)(1)-(3), specifically provide that any person who:

(1)    Knowingly presents, or causes to be presented, to an officer or employee of the State or member of the Guard a false or fraudulent claim for payment or approval;...

(2)    Knowingly makes, uses or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the State;...

(3)    Conspires to defraud the State by getting a false or fraudulent claim allowed or paid;. . .

(a)        is liable to State for civil penalty of not less than $5,500 and not more than $11,000, plus 3 times the amount of damages which the State sustains because of the act of that person.

175.    By virtue of the above-described acts, among others, Defendant Allergan knowingly caused to be presented false or fraudulent claims for payment or approval, and continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees or agents of the State of Illinois, for Lumigan.

176.    Specifically, Defendant has:

•    caused thousands of false claims to be presented to the State of Illinois,

•    knowingly made, used or caused to be made or used false records to get false claims paid,

37

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

- failed to disclose the existence of the false claims it has caused to be presented.

177.    The amounts of the false or fraudulent claims to the State of Illinois were material.

178.    Plaintiff State of Illinois, being unaware of the falsity of the claims caused to be submitted by the Defendant, and in reliance on the accuracy thereof paid and continues to pay for improperly prescribed Lumigan.

## COUNT THIRTEEN
### Violations of the Indiana False Claims and Whistleblower Act
### (IC 5-11-5.5 et seq.)

179.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.

180.    This Count is brought by Plaintiff-Relator Jane Doe in the name of the State of Indiana under the *qui tam* provisions of IC 5-11-5.5-4, for the Defendant Allergan's violations of IC 5-11-5.5-2.

181.    Defendant Allergan, at all times relevant to this action, sold and continues to sell pharmaceuticals in the State of Indiana, including Lumigan.

182.    The Indiana False Claims and Whistleblower Act, Ind. Code § 5-11-5.5-2(b) (2008), specifically provides that by engaging in certain acts a person commits an unlawful act and shall be liable to the state for civil penalties of at least $5,000 and for up to three times the amount of damages that the state sustains because of the act of that person, including:

(1)     Presents a false claim to the state for payment or approval; or

(2)     making or using a false record or statement to obtain payment or approval of a

false claim from the state; . . . or

    i.      conspiring with another person to perform an act described above; or

               Causing or inducing another person to perform an act described [above].

183.    Through the acts described above and otherwise, Defendant Allergan knowingly caused to be presented for payment and approval to the Indiana Medicaid program, possibly continues to cause to be presented, directly or indirectly, to officers, employees or agents of the State of Indiana, false and fraudulent claims in order to induce Medicaid reimbursement for Lumigan, and Defendant Allergan's other drugs, that were not eligible for any such reimbursement.

184.    Specifically, Defendant has:

- caused thousands of false claims to be presented to the State of Indiana,

- knowingly made, used or caused to be made or used false records to get false claims paid,

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; ; and,

- failed to disclose the existence of the false claims it has caused to be presented.

185.    As a result, Plaintiff Indiana reimbursed Medicare and Medicaid participating providers for ineligible claims of Lumigan, resulting in material financial losses to the State of Indiana.

186.    Plaintiff State of Indiana, unaware of the falsity of the claims caused to be presented by Defendant Allergan, and in reliance on the accuracy thereof, have paid and approved, and continue to pay and approve, claims for Lumigan that would not have been paid or approved in any part if the truth were known.

187. By reason of Defendant Allergan's wrongful conduct, Indiana has suffered substantial losses in an amount to be proved at trial, and therefore is entitled to multiple damages under the State's false claims act in an amount to be determined at trial, plus civil penalties for each such false statement caused to be made by Defendant Allegan.

## COUNT FOURTEEN
### Iowa Medicaid False Claims Act
### Iowa Code Ann. §685.1 *et seq.*

188. Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.

189. This is a claim for treble damages and penalties against all Defendants on behalf of the State of Iowa under the Iowa Medicaid False Claims Act, Iowa Code §685.1 *et seq.*

190. By virtue of the above-described acts, Defendants knowingly made or caused to be made false claims for Defendants drugs to the State of Iowa.

191. By virtue of the above-described acts, Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the State of Iowa to approve and pay such false and fraudulent claims.

192. The Iowa State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal inducements and/or business practices.

193. By reason of the Defendants' unlawful acts, the State of Iowa has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

194. The State of Iowa is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made,

used or presented by defendants plus treble damages.

## COUNT FIFTEEN
### Violations of the Louisiana Medical Assistance
### Programs Integrity Law Louisiana Rev. Stat. §437 et seq.

195.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.  This Count is brought by Plaintiff-Relator Jane Doe in the name of the State of Louisiana under the *qui tam* provisions of the Louisiana Medical Assistance Programs Integrity Law, Louisiana Rev. Stat. §437 *et seq.*

196.    Defendant Allergan at all times relevant to this action sold and marketed, and continues to sell and market, pharmaceuticals in the State of Louisiana, including Lumigan.

197.    The Louisiana False Claims Act/Medical Assistance Programs Integrity Law, La. Rev. Stat. § 46-438.3 provides:

(A)    No person shall knowingly present or cause to be presented a false or fraudulent claim.

(B)    No person shall knowingly engage in misrepresentation to obtain, or attempt to obtain, payment from medical assistance program funds;

(C)    No person shall knowingly make, use, or cause to be made or used, a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the medical assistance programs.

198.    By virtue of the above-described acts, among others, Defendant Allergan knowingly caused to be presented false or fraudulent claims for payment or approval, and continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees or agents of the State of Louisiana, for Lumigan.

199.    Specifically, Defendant has:

41

- caused thousands of false claims to be presented to the State of Louisiana,

- knowingly made, used or caused to be made or used false records to get false claims paid,

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

- failed to disclose the existence of the false claims it has caused to be presented.

200.    The amounts of the false or fraudulent claims to the State of Louisiana were material.

201.    Plaintiff State of Louisiana, being unaware of the falsity of the claims caused to be submitted by the Defendant, and in reliance on the accuracy thereof paid and continues to pay for improperly prescribed Lumigan.

**COUNT SIXTEEN**
**Maryland False Health Claims Act of 2010**
**Subtitle 6, False Claims Against State Health Plans and**
**State Health Programs, § 2-601 *et seq.***

202.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.

203.    This is a claim for treble damages and penalties under the Maryland False Health Claims Act of 2010, Subtitle 6.

204.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Maryland State Government for payment or approval.

205.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the

Maryland State Government to approve and pay such false and fraudulent claims.

206. The Maryland State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal business practices.

207. By reason of the Defendants' acts, the State of Maryland has been damaged, and continues to be damaged, in a substantial amount to be determined at trial.

208. The State of Maryland is entitled to the maximum penalty of $10,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**COUNT SEVENTEEN**
**Violations of the Massachusetts False Claims Act**
**Massachusetts Gen. Laws c.12 §5(A)**

209. Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein. This Count is brought by Plaintiff-Relator Jane Doe in the name of the State of Massachusetts under the *qui tam* provisions of the Massachusetts False Claims Act, Massachusetts Gen. Laws c.12 §5(A).

210. Defendant Allergan at all times relevant to this action sold and marketed, and continues to sell and market, pharmaceuticals in the Commonwealth of Massachusetts, including Lumigan.

211. The Massachusetts False Claims Act, Mass. Gen. Laws Ann. chap. 12, §5(B)(1)-(3), provides in part, that any person who:

(1)    knowingly presents, or causes to be presented, a false or fraudulent claim for payment; ...

(2)     knowingly makes, uses, or causes to be made or used, a false record or statement to obtain payment or approval of a claim by the commonwealth or any political subdivision thereof; ...

(3)     conspires to defraud the commonwealth or any political subdivision thereof through the allowance or payment of a fraudulent claim; ...

*     *     *

shall liable to the commonwealth or political subdivision for a civil penalty of not less than $5,000 and not more than $10,000 per violation, plus three times the amount of damages, including consequential damages, that the commonwealth or political subdivision sustains because of the act of that person.

212.    By virtue of the above-described acts, among others, Defendant Allergan knowingly caused to be presented false or fraudulent claims for payment or approval, and continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees or agents of the Commonwealth of Massachusetts, for Lumigan.

213.    Specifically, Defendant has:

•     caused thousands of false claims to be presented to the Commonwealth of Massachusetts,

•     knowingly made, used or caused to be made or used false records to get false claims paid,

•     conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

•     failed to disclose the existence of the false claims it has caused to be presented.

44

214.   The amounts of the false or fraudulent claims to the State of Massachusetts were material.

215.   Plaintiff Commonwealth of Massachusetts, being unaware of the falsity of the claims caused to be submitted by the Defendant's conspiracies and in reliance on the accuracy thereof, paid and continues to pay for improperly prescribed Lumigan.

### COUNT EIGHTEEN
### Violations of the Michigan Medicaid False Claims Act
### (M.C.L.A. 400.601 *et seq.*)

216.   Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.  This Count is brought by Plaintiff-Relator Jane Doe in the name of the State of Michigan under the *qui tam* provisions of the Michigan False Claims Act, M.C.L.A. 4000.601 *et seq.*

217.   Defendant Allergan at all times relevant to this action sold and marketed, and continues to sell and market, pharmaceuticals in the State of Michigan, including Lumigan.

218.    Through the acts described above and otherwise, Defendant Allergan knowingly caused to be presented for payment and approval to the Michigan Medicaid and/or Medicare programs, and continues to cause to be presented, false and fraudulent claims, directly or indirectly, to officers, employees or agents of the State of Michigan, in order to induce Medicaid and or Medicare to reimburse Medicaid or Medicare participating pharmaceutical providers for Lumigan when those claims were not and are not eligible for any such reimbursement.

219.    Through the acts described above and otherwise, Defendant Allergan knowingly caused to be made or used, and continues to cause to be used or made, false and fraudulent records and/or statements, in order to get claims for Lumigan allowed or paid by Medicaid and/or Medicare that were not eligible for any such reimbursement.

220.    Specifically, Defendant has:

•    caused thousands of false claims to be presented to the State of Michigan,

•    knowingly made, used or caused to be made or used false records to get false claims paid,

•    conspired to defraud the state by getting false and fraudulent claims allowed or paid; ; and,

•    failed to disclose the existence of the false claims it has caused to be presented.

221.    The amounts of the false or fraudulent claims caused to be made to the State of Michigan were material.

222.    Plaintiff State of Michigan, unaware of the falsity of the claims caused to be presented by Defendant Allergan, and in reliance on the accuracy thereof, have paid and approved, and continue to pay and approve, claims for Lumigan that would not have been paid or approved in any part if the truth were known.

223.    By reason of Defendant Allergan's wrongful conduct, Michigan has suffered substantial financial losses in an amount to be proved at trial, and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus the maximum allowable civil penalties for each such false statement caused to made or used by Defendant Allergan and each such false claim caused to be made by Defendant Allergan.

**COUNT NINETEEN**
**Violations of Michigan Public Acts, 1977 PA 72, as amended by 1984 PA 333,**
**as amended by 2005 PA 337, as amended by 2008 PA 421**

224.    Plaintiff realleges and incorporates by reference each and every of the foregoing paragraphs as if fully set forth herein.

225.    This is a claim for treble damages and penalties under the Michigan Medicaid

46

False Claims Act brought by Plaintiff Jane Doe on behalf of herself and the State of Michigan.

226.   By virtue of the acts described above, Defendant has violated the Michigan Medicaid False Claims Act.

227.   Specifically, Defendant has:

- caused thousands of false claims to be presented to the State of Michigan,

- knowingly made, used or caused to be made or used false records to get false claims paid,

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

- failed to disclose the existence of the false claims it has caused to be presented.

228.   For example, prescriptions would not have been presented but for the illegal concealment of side effects by Defendants. As a result of this illegal scheme, these claims were improper in whole pursuant to the State of Michigan's False Medicaid Claims Act.

229.   By virtue of the acts described above, Allergan knowingly made, used, or caused to be made or used, false records and statements, and omitted material facts, to induce the government to approve and pay such false and fraudulent claims.

230.   Each prescription that was written as a result of Defendants' illegal marketing practices represents a false or fraudulent record or statement. Each claim for reimbursement submitted to a State-funded health insurance program represents a false or fraudulent claim for payment.

231.   Plaintiff cannot at this time identify all of the false claims for payment that were caused by Allergan's conduct. The false claims were presented by thousands of separate entities, and over many years.

232.   The Michigan State Government, unaware of the falsity of the records, statements, and claims made, or caused to be made by Allergan, paid and continues to pay the claims that would not be paid but for Allergan's false and illegal off-label marketing practices.

233.   By reason of Allergan's acts, the Michigan State Government has been damaged, and continues to be damaged, in substantial amounts to be determined at trial.

47

234.    The State of Michigan is entitled to the maximum penalty for each and every false or fraudulent claim, record, or statement made, used, presented, or caused to be made, used, or presented by Allergan.

235.    Defendants did not, within a reasonable period of time after first obtaining information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

236.    Relator Jane Doe is a private person with direct and independent knowledge of the allegations in this Complaint, who has brought this action pursuant to Michigan's False Claims Act on behalf of herself and the State of Michigan.

237.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Michigan in the operation of its Medicaid program.

### COUNT TWENTY
### Minnesota False Claims Act
### Minn. Stat. § 15C.01 *et seq.*

238.    Relator incorporates by reference and re-alleges all above paragraphs as if fully set forth herein.

239.    This is a claim for treble damages and penalties under the Minnesota False Claims Act.

240.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Minnesota State Government for payment or approval.

241.    By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Minnesota State Government to approve and pay such false and fraudulent claims.

48

242.     The Minnesota State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal inducements and/or business practices.

243.     By reason of the Defendants' acts, the State of Minnesota has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

244.     The State of Minnesota is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

**COUNT TWENTY-ONE**
**Violations of the Montana False Claims Act**
**2005 Mont. Code, CH. 465, HB 146,** *et seq.*

245.     Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.  This Count is brought by Plaintiff-Relator Jane Doe in the name of the State of Montana under the *qui tam* provisions of the Montana False Claims Act, 2005 Mont. Code, CH. 465, HB 146, *et seq.*

246.     Defendant Allergan at all times relevant to this action sold and marketed, and continues to sell and market, pharmaceuticals, including Lumigan, in the State of Montana.

247.     The Montana False Claims Act, Mont. Code Ann., § 17-8-403 provides for liability for *inter alia* any person who engages in any or all of the following conduct:

(a)     knowingly presenting or causing to be presented to an officer or employee of the governmental entity a false claim for payment or approval;

(b)     knowingly making, using, or causing to be made or used a false record or statement to get a false claim paid or approved by the governmental entity;

(c)     conspiring to defraud the governmental entity by getting a false claim allowed or paid by the governmental entity; . . .or

(h)     as a beneficiary of an inadvertent submission of a false claim to the governmental entity, subsequently discovering the falsity of the claim and failing to disclose the false claim to the governmental entity within a reasonable time after discovery of the false claim

248.    By virtue of the above-described acts, among others, Defendant Allergan knowingly caused to be presented false or fraudulent claims for payment or approval, and continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees or agents of the State of Montana, for Lumigan.

249.    Specifically, Defendant has:

•     caused thousands of false claims to be presented to the State of Montana,

•     knowingly made, used or caused to be made or used false records to get false claims paid,

•     conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

•     failed to disclose the existence of the false claims it has caused to be presented.

250.    The amounts of the false or fraudulent claims Defendant caused to be made to the State of Montana were material.

251.    Plaintiff State of Montana, being unaware of the falsity of the claims caused to be submitted by the Defendant and in reliance on the accuracy thereof paid and may continue to pay for improperly prescribed Lumigan.

50

252. At all times relevant to the complaint, Allergan acted with the requisite knowledge.

253. By virtue of the above-described acts, among others, Defendant Allergan knowingly engaged in conspiracies to defraud the Government of Montana by getting a false claim allowed or paid by the government for Lumigan.

254. As a direct and proximate consequence of Defendant Allergan's conspiratorial conduct, the State of Montana has suffered significant, material financial damages in an amount to be proved at trial.

255. The State of Montana would not have suffered these devastating losses had the truth about Defendant's marketing conspiracies been known.

**COUNT TWENTY-TWO**
**Violations of the Nevada False Claims Act**
**Nevada Rev. Stat. §357.010 *et seq.***

256. Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.

257. This Count is brought by Plaintiff-Relator Jane Doe in the name of the State of Nevada under the *qui tam* provisions of Nevada Rev. Stat. §357.010 *et seq.*, "Submission of False Claims to State or Local Government."

258. Defendant Allergan, at all times relevant to this action, sold and continue to sell pharmaceuticals in the State of Nevada, including Lumigan.

259. Through the acts described above and otherwise, Defendant Allergan knowingly caused to be presented for payment and approval to the Nevada Medicaid program, possibly continues to cause to be presented, directly or indirectly, to officers, employees or agents of the State of Nevada, false and fraudulent claims in order to induce Medicaid reimbursement for

51

Lumigan.

260. Specifically, Defendant has:

- caused thousands of false claims to be presented to the State of Nevada,

- knowingly made, used or caused to be made or used false records to get false claims paid,

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; ; and,

- failed to disclose the existence of the false claims it has caused to be presented.

261. At all times relevant and material to this Complaint, Defendant Allergan knowingly caused false claims for payment or approval for Lumigan to be presented to officers and employees of the federal and state governments. As a result, the federal and state governments reimbursed Medicare and Medicaid provider pharmacies for ineligible claims for Lumigan, resulting in great financial loss to the Nevada government.

262. By virtue of the above-described acts, among others, Defendant Allergan knowingly caused to be made or used and continues to cause to be made or used false or fraudulent statements to get claims allowed or paid for Lumigan by the State of Nevada, for Lumigan.

263. The amounts of the false or fraudulent claims and statements caused to be made by Allergan to the State of Nevada were material.

264. Plaintiff State of Nevada, being unaware of the falsity of the claims and/or statements caused to be made or used by Defendant, and in reliance on the accuracy thereof paid and continues to pay for Defendant's improperly prescribed drug Lumigan.

**COUNT TWENTY-THREE**

**Violations of the New Hampshire False Claims Act**
**167:61-b *et. seq.***

265.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.  This Count is brought by Plaintiff-Relator Jane Doe in the name of the State of New Hampshire under the *qui tam* provisions of New Hampshire False Claims Act, 167:61-b *et. seq.*

266.    Defendant Allergan at all times relevant to this action sold and marketed, and continues to sell and market, pharmaceuticals in the State of New Hampshire.

267.    Through the acts described above and otherwise, Defendant Allergan knowingly caused to be presented for payment and approval to the New Hampshire Medicaid and Medicare programs, and continues to cause to be presented, false and fraudulent claims, directly or indirectly, to officers, employees or agents of the State of New Hampshire, to induce Medicaid and/or Medicare reimbursement for claims for Lumigan that were not and are not eligible for any such reimbursement.

268.    Through the acts described above and otherwise, Defendant Allergan knowingly caused to be made or used, and continues to cause to be made or used, false and fraudulent records and/or statements, in order to get claims for Lumigan allowed or paid by Medicaid and/or Medicare, that were not eligible for any such reimbursement.

269.    Specifically, Defendant has:

- caused thousands of false claims to be presented to the State of New Hampshire,

- knowingly made, used or caused to be made or used false records to get false claims paid,

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

- failed to disclose the existence of the false claims it has caused to be presented.

270.    The amounts of the false or fraudulent claims to the State of New Hampshire were material.

271.    Plaintiff State of New Hampshire, unaware of the falsity of the claims presented or caused to be presented by Defendant Allergan, and in reliance on the accuracy thereof, have paid and approved, and continue to pay and approve, claims for Defendant Allergan's drugs that would not have been paid or approved in any part if the truth were known.

272.    By reason of Defendant Allergan's wrongful conduct, New Hampshire has suffered substantial losses in an amount to be proved at trial, and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus the maximum penalties for each such false statement caused to be made or used by Defendant Allergan and each such false claim caused to be submitted by Defendant Allergan.

**COUNT TWENTY-FOUR**
**Violations of the New Jersey False Claims Act,**
**N.J. STAT. § 2A:32C-1**

273.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.

274.    This is a *qui tam* action brought by brought by Relator Jane Doe and the State of New Jersey to recover treble damages, civil penalties and the cost of this action, under the New Jersey False Claims Act.

275.    Defendant has engaged in a continuous practice of concealing known adverse side effects of Lumigan, with the result that it has: (a) knowingly presented and caused to be

presented, to an officer and employee of the State of New Jersey, false and fraudulent claims for payment and approval; and (b) has knowingly made, used, and caused to be made and used, false records and statements to get false and fraudulent claims paid and approved by the State of New Jersey.

276.    The New Jersey False Claim Act prohibits any person from:

(1) Knowingly presenting, or causing to be presented, to an officer or employee of the state or a member of the guard a false or fraudulent claim for payment or approval;

(2) Knowingly making, using, or causing to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

(3)    Conspiring to defraud the state by getting a false or fraudulent claim allowed or paid;

277.    Defendant knowingly and intentionally caused to be made false statements and misrepresentations of material facts on applications for payment under the New Jersey Medicaid program, claims which failed to disclose the material violations of the New Jersey False Claims Act.

278.    Defendant knowingly and intentionally caused to be made false statements and misrepresentations of material facts on applications for payment under the New Jersey Medicaid program, claims which failed to disclose the material violations of the New Jersey False Claims Act.

279.    Specifically, Defendant has:

•    Caused thousands of false claims to be presented to the State of New Jersey,

•    knowingly made, used or caused to be made or used false records to get false claims paid,

55

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

- failed to disclose the existence of the false claims it has caused to be presented.

280. For example, prescriptions would not have been presented for payment but for the illegal concealment of known adverse side effects by Defendant. As a result of this illegal scheme, these claims were improper in whole pursuant to the State of New Jersey False Claims Act.

281. By virtue of the acts described above, Allergan knowingly made, used, or caused to be made or used, false records and statements, and omitted material facts, to induce the government to approve and pay such false and fraudulent claims.

282. Each prescription that was written as a result of Defendant' illegal marketing practices represents a false or fraudulent record or statement. Each claim for reimbursement for such prescriptions submitted to a State-funded health insurance program represents a false or fraudulent claim for payment.

283. Plaintiff cannot at this time identify all of the false claims for payment that were caused by Allergan's conduct. The false claims were presented by thousands of separate entities, and over many years.

284. The New Jersey State Government, unaware of the falsity of the records, statements, and claims made, or caused to be made by Allergan, paid and continues to pay the claims that would not be paid but for Allergan's illegal concealment of adverse side effects.

285. By reason of Allergan's acts, the New Jersey Government has been damaged, and continues to be damaged, in substantial amounts to be determined at trial.

286.     New Jersey is entitled to the maximum penalty for each and every false or fraudulent claim, record, or statement made, used, presented, or caused to be made, used, or presented by Allergan.

287.     Defendant did not, within a reasonable period of time after first obtaining information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

288.     Relator Jane Doe is a private person with direct and independent knowledge of the allegations in this Complaint, who has brought this action pursuant to the New Jersey False Claims Act on behalf of herself and the State of New Jersey.

289.     This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Jersey in the operation of its Medicaid program.

### COUNT TWENTY-FIVE
### Violations of the New Mexico Medicaid False Claims Act,
### N.M. Stat ANN. §27-14-1 et *seq.*

290.     Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.  This Count is brought by Plaintiff-Relator Jane Doe in the name of the State of New Mexico under the *qui tam* provisions of the New Mexico Medicaid False Claims Act §27-14-1 *et seq.*

291.     Defendant Allergan at all times relevant to this action sold and marketed, and continues to sell and market, pharmaceuticals in the State of New Mexico, including Lumigan.

292.     Through the acts described above and otherwise, Defendant Allergan knowingly

caused to be presented for payment and approval to the New Mexico Medicaid and/or Medicare programs, and continues to cause to be presented, false and fraudulent claims directly or indirectly, to officers, employees or agents of the State of New Mexico, in order to induce Medicaid and/or Medicare reimbursement for claims for Lumigan that were not eligible for any such reimbursement.

293.    Through the acts described above and otherwise, Defendant Allergan knowingly caused to be made or used, and continues to cause to be made or used, false and fraudulent records and/or statements, in order to get claims for Lumigan allowed or paid by Medicaid and Medicare that were not eligible for any such reimbursement.

294.    Specifically, Defendant has:

•    caused thousands of false claims to be presented to the State of New Mexico,

•    knowingly made, used or caused to be made or used false records to get false claims paid,

•    conspired to defraud the state by getting false and fraudulent claims allowed or paid; ; and,

•    failed to disclose the existence of the false claims it has caused to be presented.

295.    The amounts of the false or fraudulent claims caused to be made to the State of New Mexico were material.

296.    Plaintiff State of New Mexico, unaware of the falsity of the claims presented or caused to be presented by Defendant Allergan, and in reliance on the accuracy thereof, have paid and approved, and continue to pay and approve, claims for Lumigan that would not have been paid or approved in any part if the truth were known.

297. By reason of Defendant Allergan's wrongful conduct, New Mexico has suffered substantial losses in an amount to be proved at trial, and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus the maximum civil penalty allowed under the state law for each such false claim caused to be submitted by Defendant Allergan and each such false statement caused to be made or used by Defendant Allergan.

## COUNT TWENTY-SIX

### Violations of the New Mexico Fraud Against Taxpayers Act
### N.M. Stat. § 44-9-1 *et seq.*

298. Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.

299. This is a *qui tam* action brought by Plaintiff Jane Doe on behalf of the State of New Mexico to recover treble damages, civil penalties and the cost of the civil action under the New Mexico Fraud Against Taxpayers Act, N.M. Stat. Ann. § 44-9-1.

300. N.M. Stat. Ann. § 44-9-3 (A) of the New Mexico Fraud Against Taxpayers Act provides that [a] person shall not:

(1) knowingly present, or cause to be presented, to an employee, officer or agent of the state or to a contractor, grantee or othis recipient of state funds a false or fraudulent claim for payment or approval;
(2) knowingly make or use, or cause to be made or used, a false record or statement to obtain approval or payment on a false or fraudulent claim;
(3) conspire to defraud the state by obtaining approval or payment on a false claim;
(9) as a beneficiary of an inadvertent submission of a false claim and having subsequently discovered the falsity of the claim, fail to disclose the false claim to the state agency within a reasonable time after discovery.

301. Pursuant to N.M. Stat. Ann. § 44-9-3(B) of the New Mexico Fraud Against Taxpayers Act, proof of specific intent is not required for a violation of subsection A of Section 3.

302. Defendant at all times relevant to this action, sold and continues to sell

59

pharmaceuticals in the State of New Mexico.

303.   By virtue of the illegal conduct and the other misconduct alleged herein, including causing the submissions of non-reimbursable claims for prescription drugs described above and using or causing to be used false or fraudulent records to accomplish this purpose, Defendants violated N.M. Stat. Ann. § 44-9-3(A) of the New Mexico Fraud Against Taxpayers Act with the requisite intent.

304.   Specifically, Defendant has:

- caused thousands of false claims to be presented to the State of New Mexico,

- knowingly made, used or caused to be made or used false records to get false claims paid,

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

- failed to disclose the existence of the false claims it has caused to be presented.

305.   For example, claims for reimbursement for prescriptions of Allergan's drug Lumigan prescribed to government-funded health care program beneficiaries would not have been submitted to the State of New Mexico but for the illegal practices of Defendant described in this Complaint.

306.   The New Mexico Medicaid Program, unaware of the falsity or fraudulent nature of the claims caused by the Defendant, paid for claims that otherwise would not have been allowed.

307.   By reason of these improper payments, the New Mexico Medicaid Program has been damaged, and continues to be damaged, in a substantial amount.

308.   Defendant did not, within a reasonable period of time after first obtaining

information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

309.    Relator Jane Doe is a private person with direct and independent knowledge of the allegations in this Complaint, who has brought this action pursuant to N.M. Stat. Ann. § 44-9-5 of the New Mexico Fraud Against Taxpayers Act on behalf of herself and the State of New Mexico.

310.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of New Mexico in the operation of its Medicaid program.

**COUNT TWENTY-SEVEN**
**Violations of the New York False Claims Act**
**State Finance Law, §187 *et seq.***

311.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.  This Count is brought by Plaintiff-Relator Jane Doe in the name of the State of New York under the *qui tam* provisions of the New York False Claims Act, N.Y. St. Fin. §187 *et seq.*

312.    Defendant Allergan at all times relevant to this action sold and marketed, and continues to sell and market, pharmaceuticals in the State of New York, including Lumigan.

313.    The New York False Claims Act, State Fin. Law § 189 specifically provides, in part, that a person commits an unlawful act if the person:

  a.   knowingly presents, or causes to be presented, to any employee, officer or agent of the state or a local government, a false or fraudulent claim for payment or

approval;

b. knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state or a local government

c. conspires to defraud the state or a local government by getting a false or fraudulent claim allowed or paid;

314.    Through the acts described above and otherwise, Defendant Allergan knowingly caused to be presented for payment and approval to the New York Medicaid and/or Medicare programs, and continues to cause to be presented, false and fraudulent claims, directly or indirectly, to officers, employees or agents of the State of New York, in order to induce Medicaid and or Medicare to reimburse Medicaid or Medicare participating pharmaceutical providers for Lumigan when those claims were not and are not eligible for any such reimbursement.

315.    Through the acts described above and otherwise, Defendant Allergan knowingly caused to be made or used, and continues to cause to be used or made, false and fraudulent records and/or statements, in order to get claims for Lumigan allowed or paid by Medicaid and/or Medicare that were not eligible for any such reimbursement.

316.    Specifically, Defendant has:

•    caused thousands of false claims to be presented to the State of New York,

•    knowingly made, used or caused to be made or used false records to get false claims paid,

•    conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

62

- failed to disclose the existence of the false claims it has caused to be presented.

317.    The amounts of the false or fraudulent claims to the State of New York were material.

318.    Plaintiff State of New York, unaware of the falsity of the claims caused to be presented by Defendant Allergan, and in reliance on the accuracy thereof, have paid and approved, and continue to pay and approve, claims for Lumigan that would not have been paid or approved in any part if the truth were known.

319.    By reason of Defendant Allergan's wrongful conduct, New York has suffered substantial financial losses in an amount to be proved at trial, and therefore is entitled to multiple damages under the False Claims Act, to be determined at trial, plus the maximum allowable civil penalties for each such false statement caused to made or used by Defendant Allergan and each such false claim caused to be made by Defendant Allergan.

## COUNT TWENTY-EIGHT
### North Carolina False Claims Act
### N.C. Gen. Stat. §§1-605 *et seq.*

320.    Plaintiff restates and incorporates each and every allegation above as if the same were fully set forth herein.

321.    This is a claim for treble damages and penalties under the North Carolina False Claims Act.

322.    By virtue of the acts described above, defendants knowingly presented or caused to be presented, false or fraudulent claims to the North Carolina State Government for payment or approval.

323.    By virtue of the acts described above, defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the

North Carolina State Government to approve and pay such false and fraudulent claims.

324.    By virtue of the acts described above, defendants conspired with each other and with others to defraud North Carolina by inducing the North Carolina State Government to pay or approve false or fraudulent claims.

325.    The North Carolina State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by defendants, paid and continues to pay the claims that would not be paid but for defendants' illegal inducements and/or business practices.

326.    By reason of the defendants' acts, the State of North Carolina has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

327.    The State of North Carolina is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by defendants.

**COUNT TWENTY-NINE**
**Violations of the Oklahoma Medicaid False Claims Act,**
**63 Okla. Stat.  § 5053, *et seq.***

328.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.

329.    This is a *qui tam* action brought by brought by Plaintiff-Relator Jane Doe and the State of Oklahoma to recover treble damages, civil penalties and the cost of this action, under the Oklahoma Medicaid False Claims Act, 63 Okla. Stat.  § 5053, *et. seq.*

330.    Defendant Allergan has engaged in a continuous practice of concealing the known side effects of Lumigan, with the result that they have: (a) knowingly presented and caused to be presented, to an officer and employee of the State of Oklahoma, false and fraudulent claims for

64

payment and approval; and (b) have knowingly made, used, and caused to be made and used, false records and statements to get false and fraudulent claims paid and approved by the State of Oklahoma.

331.    The Oklahoma Medicaid False Claims Act, 63 Okla. Stat.   § 5053.1 (B), specifically provides in part:

> (B) Any person who:
> (1) knowingly presenting or causes to be presented, to an officer or employee of the State of Oklahoma, a false or fraudulent claim for payment or approval;
> (2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false claim paid or approved by the state; and,
> (3) conspires to defraud the state by getting a false claim allowed or paid by the governmental entity; …
> Is liable to the State of Oklahoma for a civil penalty of not less than $ 5,000.00 and not more than $10,000.00, … plus three times the amount of damages which the state sustains because of the act of that person.

332.    Defendant knowingly and intentionally caused to be made false statements and misrepresentations of material facts on applications for payment under the Oklahoma Medicaid program, claims which failed to disclose the material violations of the Oklahoma Medicaid False Claims Act.

333.    Specifically, Defendant has:

•    caused thousands of false claims to be presented to the State of Oklahoma,

•    knowingly made, used or caused to be made or used false records to get false claims paid,

•    conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

•    failed to disclose the existence of the false claims it has caused to be presented.

334.    For example, prescriptions for Lumigan would not have been presented but for the concealment of known adverse side effects by Defendant. As a result of this illegal scheme, these claims were improper in whole pursuant to the State of Oklahoma State False Medicaid Claims Act.

335.    By virtue of the acts described above, Allergan knowingly made, used, or caused to be made or used, false records and statements, and omitted material facts, to induce the government to approve and pay such false and fraudulent claims.

336.    Each prescription that was written as a result of Defendant' illegal marketing practices represents a false or fraudulent record or statement. Each claim for reimbursement for such prescriptions submitted to a State-funded health insurance program represents a false or fraudulent claim for payment.

337.    Plaintiff cannot at this time identify all of the false claims for payment that were caused by Allergan's conduct. The false claims were presented by thousands of separate entities, and over many years.

338.    The Oklahoma State Government, unaware of the falsity of the records, statements, and claims made, or caused to be made by Allergan, paid and continues to pay the claims that would not be paid but for Allergan's concealment of known adverse side effects.

339.    By reason of Allergan's acts, the Oklahoma State Government has been damaged, and continues to be damaged, in substantial amounts to be determined at trial.

340.    Oklahoma is entitled to the maximum penalty for each and every false or fraudulent claim, record, or statement made, used, presented, or caused to be made, used, or presented by Allergan.

66

341.    Defendant did not, within a reasonable period of time after first obtaining information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

342.    Relator Jane Doe is a private person with direct and independent knowledge of the allegations in this Complaint, who has brought this action pursuant to Oklahoma False Medicaid Claims Act on behalf of herself and the State of Oklahoma.

343.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Oklahoma in the operation of its Medicaid program.

**COUNT THIRTY**
**Violations of the Rhode Island False Claims Act,**
**R.I. Gen. Laws § 9-1.1-1, *et seq.***

344.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.

345.    This is a *qui tam* action brought by brought by Relator Jane Doe and the State of Rhode Island to recover treble damages, civil penalties and the cost of this action, under the Rhode Island False Claims Act, R.I. Gen. Laws § 9-1.1-1, *et. seq.*

346.    Defendant has engaged in a continuous practice of concealing adverse side effects of Lumigan, with the result that it has: (a) knowingly presented and caused to be presented, to an officer and employee of the State of Rhode Island, false and fraudulent claims for payment and approval; and (b) has knowingly made, used, and caused to be made and used, false records and statements to get false and fraudulent claims paid and approved by the State of Rhode Island.

347.     The Rhode Island False Claims Act, R.I. Gen. Laws § 9-1.1-3(a), specifically provides in part:

(a) Any person who:

(1) Knowingly presents, or causes to be presented, to an officer or employee of the state or a member of the guard a false or fraudulent claim for payment or approval;

(2) Knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the state;

(3) Conspires to defraud the state by getting a false or fraudulent claim allowed or paid; ... is liable to the state for a civil penalty of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), plus three (3) times the amount of damages which the state sustains because of the act of that person. A person violating this subsection (a) shall also be liable to the state for the costs of a civil action brought to recover any such penalty or damages.

348.     Defendant knowingly and intentionally caused to be made false statements and misrepresentations of material facts on applications for payment under the Rhode Island Medicaid program, claims which failed to disclose the material violations of the Rhode Island False Claims Act.

349.     Defendant knowingly and intentionally caused to be made false statements and misrepresentations of material facts on applications for payment under the Rhode Island Medicaid program, claims which failed to disclose the material violations of the Rhode Island False Claims Act.

350.     Specifically, Defendant has:

68

- caused thousands of false claims to be presented to the State of Rhode Island,

- knowingly made, used or caused to be made or used false records to get false claims paid,

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

- failed to disclose the existence of the false claims it has caused to be presented.

351. For example, prescriptions for Lumigan would not have been presented but for the concealment of known adverse side effects by Defendant. As a result of this illegal scheme, these claims were improper in whole, pursuant to the State of Rhode Island False Claims Act.

352. By virtue of the acts described above, Allergan knowingly made, used, or caused to be made or used, false records and statements, and omitted material facts, to induce the government to approve and pay such false and fraudulent claims.

353. Each prescription that was written as a result of Defendant' illegal marketing practices represents a false or fraudulent record or statement. Each claim for reimbursement for such prescriptions submitted to a State-funded health insurance program represents a false or fraudulent claim for payment.

354. Plaintiff cannot at this time identify all of the false claims for payment that were caused by Allergan's conduct. The false claims were presented by thousands of separate entities, and over many years.

355. The Rhode Island State Government, unaware of the falsity of the records, statements, and claims made, or caused to be made by Allergan, paid and continues to pay the claims that would not be paid but for Allergan's concealment of known adverse side effects.

356.    By reason of Allergan's acts, the Rhode Island State Government has been damaged, and continues to be damaged, in substantial amounts to be determined at trial.

357.    Rhode Island is entitled to the maximum penalty for each and every false or fraudulent claim, record, or statement made, used, presented, or caused to be made, used, or presented by Allergan.

358.    Defendant did not, within a reasonable period of time after first obtaining information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

359.    Relator Jane Doe is a private person with direct and independent knowledge of the allegations in this Complaint, who has brought this action pursuant to the Rhode Island False Claims Act on behalf of herself and the State of Rhode Island.

360.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Rhode Island in the operation of its Medicaid program.

### COUNT THIRTY-ONE
### Violations of the Tennessee Medicaid False Claims Act
### Tenn. Stat. §§75-1-181 et seq.

361.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.

362.    This Count is brought by Plaintiff-Relator Jane Doe in the name of the State of Tennessee under the *qui tam* provisions of the Tennessee Medicaid False Claims Act, Tenn. Stat. §§75-1-181 *et seq.*

363.     Defendant Allergan at all times relevant to this action sold and marketed, and continues to sell and market, pharmaceuticals in the State of Tennessee, including Lumigan.

364.     By virtue of the above-described acts, among others, Defendant Allergan knowingly caused to be presented false or fraudulent claims for payment or approval, and continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees or agents of the State of Tennessee, for Lumigan.

365.     Specifically, Defendant has:

•     caused thousands of false claims to be presented to the State of Tennessee,

•     knowingly made, used or caused to be made or used false records to get false claims paid,

•     conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

•     failed to disclose the existence of the false claims it has caused to be presented.

366.     The amounts of the false or fraudulent claims to the State of Tennessee were material.

367.     Plaintiff State of Tennessee, being unaware of the falsity of the claims and/or statements caused to be made by the Defendant, and in reliance on the accuracy thereof paid and may continue to pay for Defendant's improperly prescribed drug Lumigan.

## COUNT THIRTY-TWO
### Violations of the Tennessee False Claims Act
### Tenn. Code Ann. § 4-18-101 *et seq.*

368.     Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs as if fully set forth herein.

369.     This is a qui tam action brought by Plaintiff Jane Doe on behalf of the State of

Tennessee to recover treble damages, civil penalties and the cost of the civil action under the *qui tam* provisions of the Tennessee False Claims Act, Tenn. Code Ann. § 4-18-101 *et seq.*

370.    Tenn. Code Ann. §4-18-103, titled "Liability for violations," provides:

(a) Any person who commits any of the following acts shall be liable to the state or to the political subdivision for three (3) times the amount of damages which the state or the political subdivision sustains because of the act of that person. A person who commits any of the following acts shall also be liable to the state or to the political subdivision for the costs of a civil action brought to recover any of those penalties or damages, and shall be liable to the state or political subdivision for a civil penalty of not less than two thousand five hundred dollars ($ 2,500) and not more than ten thousand dollars ($ 10,000) for each false claim:

   (1) Knowingly presents or causes to be presented to an officer or employee of the state or of any political subdivision thereof, a false claim for payment or approval;

   (2) Knowingly makes, uses, or causes to be made or used a false record or statement to get a false claim paid or approved by the state or by any political subdivision;

   (3) Conspires to defraud the state or any political subdivision by getting a false claim allowed or paid by the state or by any political subdivision;

   (7) Knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the state or to any political subdivision;

371.    Specifically, Defendant has:

• caused thousands of false claims to be presented to the State of Tennessee,

72

- knowingly made, used or caused to be made or used false records to get false claims paid,

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

- failed to disclose the existence of the false claims it has caused to be presented.

372. The State of Tennessee, by and through Tennessee-funded health plans, and unaware of Defendants' illegal practices, paid the claims submitted by health care providers and third party payors in connection therewith.

373. Had the State of Tennessee known that Defendants violated the federal and state laws cited herein, it would not have paid the claims submitted by health care providers in connection with Defendants' fraudulent and illegal practices.

374. As a result of Defendant's violations of Tenn. Code Ann. §§4-18-103, the State of Tennessee has been damaged in an amount far in excess of millions of dollars exclusive on interest.

375. Relator Jane Doe is a private person with direct and independent knowledge of the allegations in this Complaint, who has brought this action pursuant to Tenn. Code Ann. §§4-18-103 on behalf of herself and the State of Tennessee.

376. This Court is requested to accept pendant jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Tennessee in the operation of its Medicaid program.

### COUNT THIRTY-THREE
### Violations of the Texas Medicaid Fraud Prevention Act
### Tx. Human Resources Code, Ch. 36, §36.101 et seq.

377. Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs

as if fully set forth herein.  This Count is brought by Plaintiff-Relator Jane Doe in the name of

the State of Texas under the *qui tam* provisions of the Texas Medicaid Fraud Prevention Act, Tx.

Human Resources Code, Ch. 36, §36.101 *et seq.*

378.    Defendant Allergan at all times relevant to this action sold and marketed, and

continues to sell and market, pharmaceuticals in the State of Texas, including Lumigan.

379.    Specifically, Defendant has caused thousands of false claims to be presented to

the State of Texas and:

- knowingly made, used or caused to be made or used false records to get false claims paid,

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

- failed to disclose the existence of the false claims it has caused to be presented.

380.    By virtue of the above-described acts, among others, Defendant Allergan

knowingly caused to be presented false or fraudulent claims for payment or approval, and

continues to cause to be submitted false or fraudulent claims for payment or approval, directly or

indirectly, to officers, employees or agents of the State of Texas, for Lumigan.

381.    The amounts of the false or fraudulent claims to the State of Texas were material.

382.    Plaintiff State of Texas, being unaware of the falsity of the claims caused to be

submitted by the defendant, and in reliance on the accuracy thereof paid and continues to pay for

Defendant's improperly prescribed drug, Lumigan.

## COUNT THIRTY-FOUR
### Violations of the Virginia Fraud Against Taxpayers Act
### Va. Stat. Ch. 842, Article 19.1, § 8.01-216.1 et seq.

383.    Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs

as if fully set forth herein.  This Count is brought by Plaintiff-Relator Jane Doe in the name of

the Commonwealth of Virginia under the *qui tam* provisions of the Virginia Fraud Against Taxpayers Act, Va. Stat. Ch. 842, Article 19.1, § 8.01-216.1 *et seq.*

384.    Defendant Allergan at all times relevant to this action sold and marketed, and continues to sell and market, pharmaceuticals in the Commonwealth of Virginia, including Lumigan.

385.    By virtue of the above-described acts, among others, Defendant Allergan knowingly caused to be presented false or fraudulent claims for payment or approval, and continues to cause to be submitted false or fraudulent claims for payment or approval, directly or indirectly, to officers, employees or agents of the Commonwealth of Virginia, for Lumigan.

386.    Specifically, Defendant has:

•    caused thousands of false claims to be presented to the Commonwealth of Virginia,

•    knowingly made, used or caused to be made or used false records to get false claims paid,

•    conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

•    failed to disclose the existence of the false claims it has caused to be presented.

387.    The amounts of the false or fraudulent claims to the Commonwealth of Virginia were material.

388.    Plaintiff Commonwealth of Virginia, being unaware of the falsity of the claims caused to be submitted by the Defendant, and in reliance on the accuracy thereof paid and continues to pay for Defendant's improperly prescribed drug Lumigan.

## COUNT THIRTY-FIVE

## Washington Medicaid Fraud False Claims Act
### West's RCWA 43.131.0001 *et seq.*

389.   Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

390.   This is a claim for treble damages and penalties under the Washington Medicaid False Claims Act.

391.   By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the Washington State Government for payment or approval.

392.   By virtue of the acts described above, Defendants knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the Washington State Government to approve and pay such false and fraudulent claims.

393.   The Washington State Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendants, paid and continues to pay the claims that would not be paid but for Defendants' illegal inducements and/or business practices.

394.   By reason of the Defendants' acts, the State of Washington has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

395.   The State of Washington is entitled to the maximum penalty of $11,000 for each and every false or fraudulent claim, record or statement made, used, presented or caused to be made, used or presented by Defendants.

### COUNT THIRTY-SIX
### Violations of the Wisconsin False Claims for Medical Assistance Act,
### WIS. STAT. § 20.931, *et seq.*

396.   Plaintiff incorporates by reference and re-alleges all of the foregoing paragraphs

as if fully set forth herein.

397.    This is a *qui tam* action brought by brought by Relator Jane Doe and the State of Wisconsin to recover treble damages, civil penalties and the cost of this action, under the Wisconsin False Claims for Medical Assistance Act, WIS. STAT. § 20.931, *et. seq.*

398.    Defendant has engaged in a continuous practice of concealing known adverse side effects of Lumigan, with the result that it has: (a) knowingly presented and caused to be presented, to an officer and employee of the State of Wisconsin, false and fraudulent claims for payment and approval; and (b) has knowingly made, used, and caused to be made and used, false records and statements to get false and fraudulent claims paid and approved by the State of Wisconsin.

399.    The Wisconsin False Claims for Medical Assistance Act,   WIS. STAT.   § 20.931(2), specifically provides in part:

(2) Except as provided in sub. (3), any person who does any of the following is liable to this state for 3 times the amount of the damages sustained by this state because of the actions of the person, and shall forfeit not less than 5,000 nor more than 10,000 for each violation:

(a) Knowingly presents or causes to be presented to any officer, employee, or agent of this state a false claim for medical assistance.

(b) Knowingly makes, uses, or causes to be made or used a false record or statement to obtain approval or payment of a false claim for medical assistance.

(c) Conspires to defraud this state by obtaining allowance or payment of a false claim for medical assistance, or by knowingly making or using, or causing to be made or used, a

false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the Medical Assistance program.

400.    Defendant knowingly and intentionally caused to be made false statements and misrepresentations of material facts on applications for payment under the Wisconsin Medicaid program, claims which failed to disclose the material violations of the Wisconsin False Claims for Medical Assistance Act.

401.    Specifically, Defendant has:

- caused thousands of false claims to be presented to the State of Wisconsin,

- knowingly made, used or caused to be made or used false records to get false claims paid,

- conspired to defraud the state by getting false and fraudulent claims allowed or paid; and,

- failed to disclose the existence of the false claims it has caused to be presented.

402.    As a result of this illegal scheme, these claims were improper in whole pursuant to the State of Wisconsin State False Medicaid Claims Act.

403.    By virtue of the acts described above, Allergan knowingly made, used, or caused to be made or used, false records and statements, and omitted material facts, to induce the government to approve and pay such false and fraudulent claims.

404.    Each prescription that was written as a result of Defendant' illegal concealment of the health risks of Lumigan represents a false or fraudulent record or statement.

405.    Plaintiff cannot at this time identify all of the false claims for payment that were caused by Allergan's conduct. The false claims were presented by thousands of separate entities, and over many years.

406.    The Wisconsin State Government, unaware of the falsity of the records, statements, and claims made, or caused to be made by Allergan, paid and continues to pay the claims that would not be paid but for Allergan's fraudulent practices.

407.    By reason of Allergan's acts, the Wisconsin State Government has been damaged, and continues to be damaged, in substantial amounts to be determined at trial.

408.    Wisconsin is entitled to the maximum penalty for each and every false or fraudulent claim, record, or statement made, used, presented, or caused to be made, used, or presented by Allergan.

409.    Defendant did not, within a reasonable period of time after first obtaining information as to such violations, furnish such information to officials of the State responsible for investigating false claims violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

410.    Relator Jane Doe is a private person with direct and independent knowledge of the allegations in this Complaint, who has brought this action pursuant to the Wisconsin False Claims for Medical Assistance Act on behalf of herself and the State of Wisconsin.

411.    This Court is requested to accept supplemental jurisdiction of this related state claim as it is predicated upon the exact same facts as the federal claim, and merely asserts separate damage to the State of Wisconsin in the operation of its Medicaid program.

## COUNT THIRTY-SEVEN
### New York City False Claims Act
### New York City Administrative Code §7-801-§7-810

412.    Plaintiff incorporates by reference and re-alleges all above paragraphs as if fully set forth herein.

413.    This is a claim for treble damages and penalties against Defendants on behalf of the City of New York under the New York City False Claims Act, New York City Administrative Code §7-801-§7-810.

414.    By virtue of the above-described acts, among others, Defendant knowingly and willfully concealed the known health risks associated with Lumigan.

415.    By virtue of the above-described acts, Defendants knowingly made or caused to be made false claims for drugs to the New York City Government.

416.    By virtue of the above-described acts, Defendant Allergan knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the New York City Government to approve and pay such false and fraudulent claims.

417.    The New York City Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's illegal inducements and/or business practices.

418.    By reason of the Defendant's unlawful acts, the City of New York has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against defendant as follows:

   a.  That by reason of the aforementioned violations of the New York  City False Claims Act provisions that this Court enter judgment in Plaintiff's favor and

80

against defendants in an amount equal to not less than two times and not more than three times the amount of damages that the City of New York has sustained because of defendants' actions, plus a civil penalty of not less than $5,000 and not more than $15,000 for each violation of the New York City False Claims Act, New York City Administrative Code §7-801-§7-810;

b. That Relator, as *Qui Tam* Plaintiff, be awarded the maximum amount allowed pursuant New York City Administrative Code § 704(i) and/or any other applicable provision of law;

c. That Relator be awarded all costs and expenses of this action, including attorney's fees and court costs incurred in the prosecution of this suit; and

d. That Plaintiff and Relator have such other and further relief that this Court deems just and proper.

### COUNT THIRTY-EIGHT
### City of Chicago False Claims Act
### Municipal Code of Chicago §1-22-010-§1-22-060

419. Plaintiff incorporates by reference and re-alleges all above paragraphs as if fully set forth herein.

420. This is a claim for treble damages and penalties against Defendant on behalf of the City of Chicago under the Chicago False Claims Act, Municipal Code of Chicago §1-22-010-§1-22-060.

421. By virtue of the above-described acts, among others, Defendant Allergan knowingly and willfully concealed known health risks associated with Lumigan.

422. By virtue of the above-described acts, Defendant knowingly made or caused to be made false claims for drugs to the City of Chicago.

81

423.   By virtue of the above-described acts, Defendant knowingly made, used, or caused to be made or used false records and statements, and omitted material facts, to induce the City of Chicago to approve and pay such false and fraudulent claims.

424.   The Chicago City Government, unaware of the falsity of the records, statements and claims made, used, presented or caused to be made, used or presented by Defendant, paid and continues to pay the claims that would not be paid but for Defendant's illegal business practices.

425.   By reason of the Defendant's unlawful acts, the City of Chicago has been damaged, and continues to be damaged, in substantial amount to be determined at trial.

## COUNT THIRTY-NINE
### Violations of 19 Phila. Code § 3600, et seq.
**Knowingly presents or causes to be presented to an officer or employee a false claim for payment or approval.**

426.   Plaintiff-Relator Jane Doe and the City of Philadelphia reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

427.   This is a qui tam action brought by Plaintiff-Relator Jane Doe and the City of Philadelphia to recover treble damages, civil penalties, the cost of this action, and their attorney's fees under the City of Philadelphia's False Claims Act.

428.   The City of Philadelphia's False Claims Act, 19 Phila. Code § 3602(1), provides that a City contractor can be held liable if it "[k]nowingly presents or causes to be presented to an officer or employee a false claim for payment or approval."

429.   By virtue of the above-described acts, Defendant Allergan knowingly presented or caused to be presented false claims for approval.

430.   The amount of the false claims to the City was material.  Plaintiff City of

82

Philadelphia was unaware of the falsity of the claims, and in reliance on the accuracy thereof, approved and continues to approve the unlawful payment of claims for Lumigan.

431.    The City of Philadelphia has suffered substantial losses as a result of Allergan's violations of 19 Phila. Code § 3602(1) in an amount that exceeds hundreds of thousands of dollars, and is entitled to treble damages under the False Claims Act, plus relevant civil fines, penalties, costs of suit, and attorney's fees in conformity with the City of Philadelphia's False Claims Act, to be determined at trial.

**COUNT FORTY**
**Violations of Allegheny County Code of Ordinances Chapter 485**
**Knowingly presents or causes to be presented to an officer or employee a false claim for payment or approval.**

432.    Plaintiff-Relator Jane Doe and Allegheny County, Pennsylvania reallege and incorporate by reference each and every of the foregoing paragraphs as if fully set forth herein.

433.    This is a qui tam action brought by Plaintiff-Relator Jane Doe and Allegheny County, Pennsylvania to recover treble damages, civil penalties, the cost of this action, and their attorney's fees under the Allegheny County False Claims Ordinance.

434.    The Allegheny County False Claims Ordinance, Allegheny County Code of Ordinances, Chapter 485-Section 2(A) provides that any person who "knowingly presents or causes to be presented to an officer or employee of the County a false claim for payment or approval" shall be "liable to the County for three times the amount of damages which the County sustains because of such action, and shall be liable for attorneys' fees and costs for any civil action brought to recover such damages and penalties.

435.    By virtue of the above-described acts, Defendant Allergan knowingly presented or caused to be presented false claims for approval.

436.    The amount of the false claims to Allegheny County was material.  Plaintiff

Allegheny County was unaware of the falsity of the claims, and in reliance on the accuracy thereof, approved and continues to approve the unlawful payment of claims for Lumigan.

437.    Allegheny County has suffered substantial losses as a result of Allergan's violations of the False Claims Ordinance in an amount that exceeds hundreds of thousands of dollars, and is entitled to treble damages under the False Claims Ordinance, plus relevant civil fines, penalties, costs of suit, and attorney's fees in conformity with the Allgheny County False Claims Ordinance, to be determined at trial.

## JURY DEMAND

438.    Plaintiff demands trial by jury on all claims.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff-Relator Jane Doe, on behalf of herself, the United States of America and the Plaintiff States, demands and prays that judgment be entered as follows against the Defendant Allergan under the Federal FCA Counts and under supplemental FCA counts of the Plaintiff States as follows:

(a)    In favor of the United States against Defendant Allergan for treble the amount of damages to Government health Care Programs (Medicaid, Medicare, Medicare Part D, the Railroad Retirement Medicare Program, Federal Employees Health Benefit Programs, Tri-Care (formerly CHAMPUS), CHAMPVA, State Legal Immigrant Assistance Grants and the Indian Health Service) from the illegal marketing, selling, prescribing, pricing and billing alleged herein, plus the maximum civil penalties of $11,000 (plus interest) for each false claim caused to be submitted, for each false record submitted or caused to be submitted and each false claim caused to be submitted by Defendant Allergan's conspiracy to submit false claims;

(b)     In favor of the United States against the Defendant Allergan for disgorgement of the profits earned by Defendant Allergan as a result of its illegal scheme;

(c)     In favor of Plaintiff-Relator Jane Doe for the maximum amount allowed pursuant to 31 U.S.C. §3730(d) to include reasonable expenses, attorneys fees and costs incurred by Plaintiff-Relator Jane Doe;

(d)     For all costs of the Federal FCA civil action;

(e)     In favor of the Plaintiff-Relator Jane Doe and the United States for such other relief as this Court deems just and equitable;

(f)     In favor of the Plaintiff-Relator Jane Doe and the named State Plaintiffs against Defendant Allergan in an amount equal to three times the amount of damages that the named Plaintiff States have sustained as a result of the Defendants' actions, as well as the statutory maximum penalty against the Defendant Allergan for each violation of each State's FCA;

(g)     In favor of Plaintiff- Relator Jane Doe for the maximum amount allowed as Relator's share pursuant to the Plaintiff State FCAs as follows: the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175, *et seq.*, the California False Claims Act, Cal. Gov. Code §12651(a), the Delaware False Claims and Reporting Act, Del. Stat. Tit. VI. §1201, *et seq.,* the District of Columbia False Claims Act, D.C. Stat. §2-308.03 *et seq.*, the Florida False Claims Act, Fl. Stat. §§68.081-68.09, *et seq.,* the Hawaii False Claims Act, Haw. Rev. Stat. §661-21 *et seq.,* the Louisiana Medical Assistance Programs Integrity Law, La. Rev. Stat. §439, *et seq.,* Massachusetts False Claims Act, Mass. Gen. Laws c.12 §5(A), *et seq.,* the Michigan Medicaid False Claims Act, M.C.L.A. 400.601 *et seq.;* Michigan Public Acts, 1977 PA 72, as amended by 1984 PA 333, as amended by 2005 PA 337, as amended by 2008 PA 421; the Montana False Claims Act, 2005 Mont. Code, CH. 465, HB 146, *et seq.*, the Nevada False Claims Act, Nevada

Rev. Stat. §357.010 *et seq.*, the New Hampshire False Claims Act, 167:61-b *et seq.*, the New Mexico False Claims Act, N.M. Stat ANN. §27-14-1 *et seq.*; New Mexico Fraud Against Taxpayers Act , N.M. Stat. § 44-9-1 *et seq.*; the New York False Claims Act, State Finance Law, §187 *et seq.*; the Tennessee Medicaid False Claims Act, Tenn. Stat. §§75-1-181 *et seq.*; the Tennessee False Claims Act Tenn. Code Ann. § 4-18-101 *et seq.*; the Texas Medicaid Fraud Prevention Act, Tx. Human Resources Code, Ch. 36, §36.101 *et seq.*, Indiana False Claims and Whistleblower Act, IC 5-11-5.5 *et seq.*, Georgia State False Medicaid Claims Act, Ga. Code 49-4-168 *et seq.,* and the Virginia Fraud Against Taxpayers Act, Va. Stat. Ch. 842, Article 19.1, §8.01-216.1 *et seq.;* New Jersey False Claims Act, N.J. STAT. § 2A:32C-1; Oklahoma Medicaid False Claims Act,   63 Okla. Stat.   § 5053, *et seq.*; Wisconsin False Claims for Medical Assistance Act,   WIS. STAT.   § 20.931, *et seq.*; and the Rhode Island False Claims Act, R.I. Gen. Laws  § 9-1.1-1, *et seq.*; plus interest;

(h)      In favor of Plaintiff- Relator Jane Doe for all costs and expenses associated with the supplemental claims of the Plaintiff States, including attorney's fees and costs;

(i)      In favor of the Plaintiff States and Plaintiff- Relator Jane Doe for all such other relief as the Court deems just and proper; and,

(j)      In the event that the United States or Plaintiff States proceed with this action, Plaintiff-Relator Jane Doe, be awarded an appropriate amount for disclosing evidence or information that the United States and/or the Plaintiff States did not possess when this action was brought to the government.   The appropriate amount is not greater than twenty-five percent (25%) of the proceeds of the action or settlement of a claim.   The amount awarded to Plaintiff-Relator also includes the results of government actions or settlement of claims resulting from the expansion

of claims through the government's further investigation directly generated from or attributable

to Plaintiff-Relator's information; and

(k)     Such other relief as this Court deems just and appropriate.

Respectfully Submitted,
**KENNEY & McCAFFERTY, P.C.**

DATED: July 11, 2014

MEREDITH TAVENNER SHEPHERD-DEMING, ESQUIRE
NY Attorney ID # MD 8118
BRIAN P. KENNEY, ESQUIRE
BRIAN P. MCCAFFERTY, ESQUIRE
EMILY C. LAMBERT, ESQUIRE
1787 Sentry Parkway West
Building 18, Suite 410
Blue Bell, PA 19422
Telephone: 215-367-4333
Facsimile: 215-367-4335
**Counsel for Plaintiff-Relator Jane Doe**